THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID SHORT *et al.*, Defendants-Appellants.

Fifth District   No. 76-375

Opinion filed November 22, 1978.

Michael J. Rosborough, of State Appellate Defender's Office, of Mt. Vernon, and David Y. Eberspacher, research assistant, for appellants.

Kelly D. Long, State's Attorney, of Hillsboro (Bruce D. Irish and Keith P. Vanden Dooren, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendants David Short and James Strong appeal from orders of the circuit court of Montgomery County sentencing them on convictions of criminal damage to property and dismissing their post-conviction petitions. The appeals have been consolidated in this court.

Defendants were charged by information with the offenses of burglary, arson and criminal damage to property arising out of events which occurred on January 30, 1976. On that date David Short, age 18, and James Strong, age 17, both in their senior year at Hillsboro High School, met on the high school parking lot and decided to skip school and go hunting. Driving in Short's automobile defendants proceeded to the Strong's residence south of Coffeen, Illinois. After watching television for a while, the youths visited the Greenwood Grocery in Coffeen where they attempted to purchase some rifle shells. Since Greenwood no longer stocked shells, defendants returned to the Strong residence and again watched television. Around 11 a.m. the defendants decided to walk to the nearby Krug residence to "look around." Douglas Krug and Mildred Krug had purchased the 40-acre farm as a week-end recreational and eventual retirement site and had been remodeling the house since 1974. Finding no one at home, the defendants forced open the front door of the residence. Once inside the youths ate some cookies and drank soda and beer which they found in the refrigerator. They found a bottle of whiskey, some rifle shells and a cigarette maker which they placed on the kitchen table. At that point the defendants began "playing around," throwing eggs at one another and so forth. One of the youths found a can of charcoal lighter and began squirting it on the floor, lighting the fluid and putting out the blaze. Defendants then squirted the charcoal lighter fluid on the couch located in the living room and lit a match to it. Unlike the fires on the floor, the fire on the couch flared up and became uncontrollable. After unsuccessfully trying to put out the blaze, the defendants became frightened and ran from the house, picking up the items on the kitchen table as they departed. They threw the whiskey bottle in a lake on the other side of the Krug property and discarded the cigarette maker somewhere along the roadside. By the time the defendants reached the Strong residence, they observed the Coffeen Volunteer Fire Department, which had been summoned by a passerby, arrive at the Krug residence. The fire was quickly extinguished; however, extensive damage to the house had occurred. The Krugs, who were paid $6500 by their insurance carrier for the damage, estimated that an additional $3000 would be

needed to restore the property to its prefire condition. The defendants gave both oral and written statements to the police admitting their responsibility for the fire. The jury acquitted the defendants of the burglary and arson charges, but found the defendants guilty of criminal damage to property.

At the July 29, 1976, sentencing hearing the People presented evidence in aggravation and asked that the maximum of one to three years in the penitentiary and a fine of $1000 be imposed. Several character witnesses testified on behalf of each of the defendants. The defense attorneys asked for probation plus restitution as punishment for the offense in question. At the conclusion of the hearing the judge stated that the sentencing alternatives submitted by the defendants were completely inadequate and continued the case for additional arguments as to sentencing alternatives. On August 24, 1976, the court held a second sentencing hearing at which time it sentenced the defendants to the maximum term allowable of 1 to 3 years and imposed a fine of $1000 per defendant.

Each defendant immediately filed a notice of appeal and on May 5, 1977, counsel for defendants filed a petition for post-conviction relief. This petition alleged, *inter alia,* that in mid-September 1976 the sentencing judge had informed defendant Short's mother, Bernice Short, that he had granted the July 29 continuance to allow defendants' parents the opportunity to pay the restitution to the Krugs. Attached to the petition was the sworn affidavit of Mrs. Short.

Defendants contend that as a result of the trial court's improper considerations in sentencing, they were denied due process and equal protection of the law. In July of 1977 defendants further filed a motion for substitution of judges. In response the State filed a motion to dismiss defendants' petition on the basis that an appeal in the case was then pending and that defendants had failed to set forth any facts or allegations involving constitutional rights or issues.

At the hearing on defendants' post-conviction petition, the trial court refused defendants' request that the motion for substitution of judges be heard prior to the petition for post-conviction relief. The court proceeded to dismiss the latter petition and avoided ruling upon the motion for substitution.

■■■ We note at the outset that a trial judge should recuse himself when it appears he may be a material witness or would have knowledge *dehors* the record of the truth or falsity of allegations in the petition for post-conviction relief. (*People v. Wilson,* 37 Ill. 2d 617, 230 N.E.2d 194; *People v. Washington,* 38 Ill. 2d 446, 232 N.E.2d 738.) Since the trial judge in this case would be the only witness other than affiant Mrs. Short with knowledge of the content of the alleged conversation, he should have

granted defendants' motion for substitution of judges. However, we need not decide whether defendants' petition sufficiently alleged error of a constitutional magnitude for questions raised in defendants' direct appeal convince us that the trial court improperly considered the ability of defendants' parents to lend them the money to make restitution to the Krugs as a condition precedent to the imposition of probation in this case.

The mother of each defendant testified at the initial sentencing hearing. Following the State's cross-examination of Mrs. Strong, the court posed the following question:

> "THE COURT: Just a moment. Are you and your husband in a position where you could advance the money to your son in payment of restitution and let him owe you instead of the people that are the victims?
>
> THE WITNESS: Well, if it wasn't too much. We're not—we're just working people. My husband's retired.
>
> THE COURT: In the event of conditional discharge or probation is given, one of the terms would be restitution. And frankly, from the evidence so far, the evidence concerning the restitution, would put half of that restitution at $4,789.20. Ordinarily in the even [sic] of conditional discharge and probation and no jail term, there'd be substantial fine. Do you feel you could loan your son money in those amounts or not so that he could pay the restitution and owe you? That's my question.
>
> THE WITNESS: Well, I guess we could. I just don't know right off hand.
>
> THE COURT: In the penitentiary there's no restitution that would be possible under a penitentiary sentence. That's the extent of the Court's authority in a sentence. Understand that?
>
> THE WITNESS: Yes.
>
> THE COURT: Now what's your answer to my question?
>
> THE WITNESS: Well, we'd probably pay it."

Similarly, the following colloquy occurred between the trial judge and Mrs. Short:

> "THE COURT: You don't feel that you and your husband could advance the approximate sum of $5,000.00, loan it to your son and have him repay you instead of making payments?
>
> THE WITNESS: Right now, any other time, years back we could have. But my husband is disabled and he hasn't worked in 3 years and we just—it's just a bad time for us. We might be able to borrow it, but I think it's—we could co-sign with David— something we'd try to work out."

The record in this case indicates that the trial court may have improperly

conditioned the imposition of probation on the defendants' ability to obtain loans from their parents in order to make immediate restitution to the Krugs.

Section 5—6—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—1), in effect at the time of sentencing, provides in pertinent part:

"(a) The court shall impose a sentence of imprisonment upon an offender if, having regard to the nature and circumstance of the offense, and to the history, character and condition of the offender, the court is of the opinion that:

(1) his imprisonment is necessary for the protection of the public; or

(2) the offender is in need of correctional treatment that can most effectively be provided by a sentence to imprisonment; or

(3) probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice."

Furthermore, our State Constitution provides that all penalties "shall be determined *both* according to the seriousness of the offense *and* with objective of restoring the offender to useful citizenship." (Emphasis added.) (Ill. Const. 1970, art. I, §11.) While the offense in this case is unquestionably serious, there is nothing in the defendants' backgrounds to indicate that imprisonment is required. Neither of these youths had ever violated even the traffic laws in the past. Both had just graduated from high school and were either employed or looking for fulltime employment. Defendant Strong was planning to enroll in a welding course in the fall. Thus, we must assume that the defendants' inability to borrow enough money to make immediate restitution tipped the scales in favor of incarceration.

■■ This consideration relates neither to deprecation of the seriousness of the offense nor rehabilitation of the offender, but rather to compensation of the individual victims. Although restitution may be imposed as a condition of probation, it would be patently unjust to deny probation because of an apparent inability to make immediate restitution.

In *People v. Tidwell*, 33 Ill. App. 3d 232, 338 N.E.2d 113, a defendant sentenced to probation conditioned upon payment of $200 restitution argued that the court abused its discretion in ordering restitution upon evidence that he had no funds with which to meet the obligation. That court held that reparation need not be predicated upon the prospective probationer's ability to pay and that a probation order may not be revoked if the only violation is the probationer's failure to pay money he does not have. Moreover, in *People v. Harpole*, 97 Ill. App. 2d 28, 239 N.E.2d 471, this court noted that:

"We fail to see how restitution can be the controlling factor under a theory of penology which emphasizes the rehabilitation of the offender. At best, restitution evidences a contrite and remorseful offender. Where, however, restitution becomes the ultimate criterion for imposition or relaxation of punishment, as we believe occurred in the instant case, a theory of penology is propounded which predicates punishment upon the inability of the offender to make monetary payment for his misconduct." 97 Ill. App. 2d 28, 34.

■■ Surely, it is unthinkable that under our system of justice two prospective probationers otherwise similarly situated might receive different penalties solely on the basis of their ability to make restitution. For these reasons, we believe the trial court abused its discretion when it sentenced these defendants to the Department of Corrections.

We call attention to other errors occurring at the sentencing hearing which were not briefed by appellate counsel, but which were of such magnitude that they deserve comment.

The People presented the testimony of several witnesses in aggravation at the sentencing hearing. James Moore, Chief Deputy Sheriff of Montgomery County, testified in pertinent part as follows:

"DIRECT EXAMINATION

BY MR. LONG:

Q. State your name, please, sir.

A. William James Moore.

Q. What is your occupation?

A. Chief Deputy Sheriff, Montgomery County, Illinois.

Q. And you are the same person that testified at an earlier date in the trial of this cause?

A. I am.

Q. Deputy Moore, reflecting back to the occurrences in this case, do you feel that this was an extremely serious matter?

A. Certainly was, yes.

Q. Do you feel that a mild punishment, probation only, would deprecate the seriousness of the offense of this matter?

A. Yes, I believe it would.

Q. Could you speak up just a little bit, Jim?

A. Yes, I believe it would.

Q. Do you feel that a mild sentence would not serve as a determent [sic] to others to not commit the same type of conduct—setting a house on fire?

A. Yes.

Q. To your knowledge, has any restitution been made to Mr. and Mrs. Krug for damages to their home?

A. Not to my knowledge."

Donald R. Toberman, the local postmaster and chief of the Coffeen Fire Department testified in pertinent part as follows:

"Q. Is the prevention and extinction or extinguishing of fires a costly undertaking for a city as small as a city of the size of Coffeen?

A. Very much so.

Q. Do you feel that it would lessen the seriousness of the offense, the setting of this house on fire, if these two defendants that have been convicted of setting this fire would be given a light to mild sentence?

A. I think they should be.

Q. You think they should be what, sir?

A. Given a light sentence.

Q. And on what reason do you base that? You think they should or shouldn't?

A. They should. The reason—

Q. Yes, sir?

A. If there's only damages paid for, they don't pay for them. If there's only a fine, they don't pay it. If there's any punishment, some kind of a light sentence is the only way to punish them.

Q. And what do you mean by a light sentence?

A. Thirty days served on the weekend in the county jail."

Jim Davidson, assistant fire chief of the Coffeen Fire Department testified in pertinent part as follows:

"Q. Is the fighting and extinguishing of fires a dangerous occupation or dangerous endeavor?

A. It is very dangerous.

Q. Do you feel that the firemen that had to go respond to this fire at the Douglas Krug residence were endangered by the fact they had to fight this fire?

A. It could have been very much so in a very short time. And going to the fire is another dangerous situation.

Q. Do you feel that the defendants should be punished for this crime?

A. I do.

Q. Do you feel that a light sentence or a mild sentence would serve as any determent to other people not to set houses on fire?

A. I think they should have some kind of punishment, jail sentence for weekend or 60 days on the weekend, that's the way I feel about it—and more."

Douglas N. Krug, the owner of the house that was damaged, testified in pertinent as follows:

"Q. Have you received any payment other than your insurance company for the damages as a result of this fire?

A. No.

Q. After you were paid by the insurance company, did you discover any other damages to the house that you hadn't discovered before?

A. Various things have happened that I didn't notice—wiring going bad, other wiring we replaced it all. I had a gun that I didn't include on it that was bad. The seals had all melted in it. Just odds and ends of things like that.

Q. Did you have any trouble with your windows after that?

A. Windows were bad, don't slide.

Q. What type of windows were these?

A. Storm windows.

Q. Did you have to replace them?

A. I haven't yet.

Q. Do you have an approximate value that you will have to pay to replace these windows?

MR. HUBER: Before the question, may we approach the bench?

* * *

Q. [Mr. Long] What would be the approximate value, sir?

A. I'm sorry?

Q. What would be the approximate value to replace these windows?

A. It's going to cost me another $3,000.00 to do what I've done, somewhere in that area, to get it back into shape.

* * *

Q. Mr. Krug, do you feel that it will deter other people—strike that. Do you feel that a sentence of imprisonment would be proper in this case?

A. Yes.

Q. What do you base your opinion on, sir?

A. Well, I think anybody that does it should be punished to the full extent of the law.

Q. Do you feel it would deprecate or lessen the seriousness of this conduct if they received a light sentence without going to jail?

A. I think they should have a full sentence; whatever the law provides for.

Q. Has the fire put a great burden upon your family to rebuild your house?

A. Yes.

Q. Has it caused you to have to work on the house at a time when you—

A. When I wouldn't be? I'm sorry.

Q. Would you have had the house completed shortly after the fire when the fire occurred?

A. It set us 6 months behind at least.

Q. Has either defendant ever offered to help you do any repair work on the house since the trial? ·

A. No."

Mildred C. Krug, the wife of Douglas N. Krug, testified in pertinent part, as follows:

"Q. Do you feel it would lessen the seriousness of their conduct of setting your house on fire if they were just given a sentence of probation?

A. My feeling is that there should be full restitution and they should have the maximum penalty for what they've done. They stated in writing and on the stand that they set the things on the table that they were going to steal and then they went and poured the charcoal starter on the floor to start the fires. The jury let them off on arson and burglary, and now I think they should be given the maximum for what they've done. If not, I think it's giving a license to anyone else who might want to do it to their families or to anyone of us."

■■ It is the sole function of the trial judge to decide whether probation would deprecate the seriousness of the offense. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—1(a)(3).) For purposes of sentencing the trial court is entitled to wide latitude and is neither restricted to evidence showing guilt nor bound by the rules of evidence at the hearing, but may look to the *facts* which tend to aggravate or mitigate the offense and inquire into the defendant's general moral character, mentality, habits, social environment, etc. (*People v. Adkins*, 41 Ill. 2d 297, 242 N.E.2d 258; *People v. Redfern*, 118 Ill. App. 2d 334, 254 N.E.2d 171.) In this case, the State's Attorney embarked upon more than a mere inquiry into the relevant facts and circumstances of the case. Rather he examined the leading members of the community as to their opinions that the granting of probation would deprecate the seriousness of the offense involved. This was the ultimate decision to be made exclusively by the trial court after hearing testimony from witnesses regarding facts surrounding the offense and qualities of the defendants which would affect their successful completion of probation. It was not a matter on which testimony from the public should have been elicited. American Bar Association Standard 5.3 Relating to Sentencing Alternatives and Procedures specifies that "* * * the prosecutor, no less than the judge, has the duty to resist public clamor or improper pressure of any sort." ABA Standards, Sentencing Alternatives and Procedures §5.3 (1974).

We are unaware of any Illinois decision in which this precise question has been discussed; however, the court in *People v. Nance*, 26 Ill. App. 3d 182, 324 N.E.2d 652, noted the impropriety of considering, inter alia, the effect that strict punishment of the defendant would have on the morale and efficiency of the police force. Similarly, in *People v. Rednour*, 24 Ill. App. 3d 1072, 322 N.E.2d 492, we recognized that a trial court's consideration of public clamor for stricter sentences was improper. Finally, in *People v. Sumner*, 40 Ill. App. 3d 832, 354 N.E.2d 18, the trial judge stated that he had discussed the punishment to be imposed with other judges and members of the public and concluded that probation or conditional discharge would deprecate the seriousness of the offense committed. Although the appellate court's major objection to this procedure was that it deprived the defendant of an opportunity to challenge the bias of the information obtained, we believe such evidence is incompetent even if elicited during the sentencing hearing itself. As explained by the court in *People v. Sumner*,

"We realize that it is difficult for the judge who must impose sentence in a case of notoriety to be unaware of public opinion as to sentence. For the judge to engage in conversations on the subject with members of the public only compounds the problem." 40 Ill. App. 3d 832, 839.

Nor do we believe that the presumption that the sentencing court recognized and disregarded incompetent evidence at the hearing in aggravation and mitigation *(People v. Johnson*, 13 Ill. App. 3d 204, 300 N.E.2d 535) should be invoked in this case. At the pronouncement of sentence following the second hearing, the only reasons given by the court for its denial of probation was that "probation or conditional discharge would take away from the seriousness of this conduct and would not be consistent with the ends of justice." Under these circumstances we are unable to say that the court was not influenced by the incompetent testimony. We deem the practice of questioning prominent members of the community as to their opinions on the kinds of sentence to be imposed improper.

Defendants filed a supplemental brief requesting that they be entitled to elect to proceed under certain provisions of the Illinois Sentencing Act of 1977 and that we declare the applicability section of that act unconstitutional. This exact argument was recently rejected by the Illinois Supreme Court in *People v. Grant*, 71 Ill. 2d 551, 377 N.E.2d 4. Accordingly, we find no merit to defendants' final contention.

For the foregoing reasons the judgments of the trial court convicting defendants of criminal damage to property are affirmed, but the sentences on said convictions are reversed. This case is remanded to the circuit court of Montgomery County for a sentencing hearing before a

different judge. Since we have decided this case on the merits of the direct appeal, the issues raised by defendants in their post-conviction proceeding have become moot and therefore their appeal from the denial of their post-conviction petition is dismissed.

Affirmed in part, reversed in part and remanded for further proceedings.

KARNS and JONES, JJ., concur.