THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RANDALL J. VISOR, Defendant-Appellant.

Second District    No. 2—98—1202

Opinion filed May 23, 2000.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Martha M. Gillis, of Evanston, for the People.

JUSTICE McLAREN delivered the opinion of the court:

After a jury trial, the defendant, Randall J. Visor, was found guilty of six counts of reckless homicide (720 ILCS 5/9—3(a) (West 1996)). The trial court sentenced the defendant on two counts to two concurrent terms of 13 years' imprisonment. The defendant appeals his convictions and sentence. We affirm in part, vacate in part, reverse in part, and remand the cause.

The following facts are taken from the record. On October 21, 1997, the defendant was arrested, taken into custody, and charged with 16 counts of reckless homicide in connection with an automobile accident that resulted in the death of four women. Subsequently, the defendant's bond was reduced and on November 26, 1997, the defendant was released on bond with the following restrictions:

"[A]s a condition of the defendant's bond, he is to remain at his residence *** and is allowed to leave to meet with his attorneys and those working with his attorneys and other professionals and to attend court."

Before trial, all but six counts were nol-prossed by the State. The first remaining count, count I, alleged that the defendant committed the offense of reckless homicide in that the defendant:

"[W]hile under the influence of alcohol to a degree which rendered him incapable of safely driving and while acting in a reckless manner, performed acts likely to cause the death or great bodily harm to some individual, in that he operated a motor vehicle *** at a speed which was greater than reasonable and proper with regard to the existing traffic conditions and the safety of persons upon the roadway and entered into the intersection of Eola Road in disobedience to the steady red traffic control lights at that intersection causing his motor vehicle to strike another vehicle, thereby causing the death of Allison Matzdorf, Jenni Linn Anderson and Jennifer Roberts."

Count II was identical to count I except that it named only Ana Pryor (a passenger in the defendant's car) as the victim. Count VII, the next remaining count, was similar to count I, but it omitted the element of the influence of alcohol. Count VIII was identical to count VII but named only Pryor as the victim. Count XI was identical to count I but added, "while under the influence of alcohol, with an alcohol

concentration in his blood of 0.08 or more." Count XII, the last remaining count, was identical to count XI but named only Pryor as the victim.

The following evidence was uncontroverted at trial. In the early morning of October 13, 1997, Matzdorf, Anderson, and Roberts, all 16 years of age, left their homes to engage in homecoming weekend activities. In particular, the girls were going to "toilet paper" or "T.P." the home where the homecoming float was stored. Allison Matzdorf drove the other girls in her family's white Toyota Camry. Anderson sat in the front passenger seat and Roberts sat in the backseat. All three girls wore seatbelts. At approximately 4 a.m., the girls' white Camry was struck by the defendant's car at the intersection of Eola and New York Roads in Aurora, Illinois, when the defendant ran a red light, driving 75 miles per hour in a 45-mile-an-hour zone. All three teenagers died as a result of injuries caused by the collision. Ana Pryor, the defendant's friend who was a passenger in the defendant's car, also died as a result of injuries caused by the collision. Pryor, whose husband had died the previous year in another traffic accident, was the mother of three young children.

Stephen Peterson testified that, while stopped in his car at the intersection of Eola and New York Roads, he saw the defendant's car strike the driver's side of the girls' white Camry at a 90-degree angle. The Camry became airborne and landed in a ditch. The defendant's car was halfway in the ditch and the driveway of a nearby gas station. Peterson immediately pulled into the gas station and asked someone to call the police.

Aurora police officer Ron Hinterlong testified that he arrived at the accident scene at approximately 4 a.m. All four women appeared dead. The traffic signals functioned properly. The defendant asked Hinterlong, "Am I going to jail?" and "Is anybody as bad as I am?" Hinterlong noticed nothing unusual about the defendant's speech and was not close enough to smell the defendant's breath.

The defendant was taken to a nearby hospital. At 5 a.m., approximately one hour after the collision, the defendant's blood was drawn. A toxicology test revealed that the defendant's blood-alcohol concentration (BAC) was 0.172. This test was run on serum rather than whole blood. The defendant's serum blood BAC converted to a whole blood BAC of 0.14 to 0.15. Pryor's BAC was 0.0836. Another blood draw performed at 7:20 the same morning yielded a 0.097 BAC test result for the defendant. The three teenaged girls tested negative for chemicals in their blood except for Matzdorf, who tested positive for caffeine.

Just after the collision, the defendant's car contained the follow-

ing items: on the passenger-side floor board, a partly full bottle of Special Brew, a brown paper bag containing a broken bottle of an alcoholic beverage called St. Ides, a liquor store receipt from the previous evening, and, on the driver's-side floorboard, an open, partly full bottle of Canadian Mist. The Special Brew contained 6% ethanol, and the Canadian Mist contained 42% ethanol.

Two employees of the Hollywood Casino in Aurora testified that they both served the defendant Long Island iced teas at 10:50 p.m., on October 16, 1997, the evening before the accident, and at 1 or 1:30 a.m. on the morning of the accident. The Long Island iced teas contained tequila, rum, vodka, cognac, and gin. Pryor drank a daiquiri. Twenty minutes after the defendant ordered his second Long Island iced tea, he ordered a shot of Hennessy but then canceled the order. Neither Hollywood Casino employee saw any signs that the defendant was intoxicated.

Tim Rueckert, an Illinois police officer employed by the Illinois Gaming Board, testified that he shared an elevator with the defendant at the casino at about 1 o'clock on the morning of the accident. The defendant did not have a drink with him at the time. Rueckert saw the defendant again at about 2:30 a.m. The defendant finished drinking a half-full 10-ounce cup of brown beverage and left the casino building. The defendant told Rueckert that Pryor was upset because their friends had left without them. Rueckert noticed no signs that the defendant was impaired by alcohol.

Sunshine Latham, a server at an Aurora Denny's restaurant, testified that she served the defendant breakfast at approximately 3:20 on the morning of the accident. The defendant ordered and ate two pancakes, two eggs, two sausages, and two strips of bacon. After eating that, the defendant ordered and ate four more eggs and four more sausages. The defendant was loud, rude, and smelled of alcohol. In response to the defendant's question, Latham told the defendant she could not serve alcohol. The defendant then told Latham that he did not want "the f---ing water." Latham testified that, as the defendant left the restaurant, he staggered and leaned on Pryor's shoulder. However, Deborah Porter, an Aurora police officer, testified that, during an interview, Latham did not use the word "staggered." Instead, Latham said that the defendant had had trouble walking.

Officer Hinterlong testified that he briefly saw the defendant and Pryor at the Denny's restaurant about half an hour earlier that morning. The defendant was eating breakfast. Hinterlong did not notice anything unusual about the defendant at that time.

Two expert witnesses provided the following opinions after analyzing the accident scene and the defendant's car. The accident was not

caused by any defect or malfunction associated with the defendant's car. The car driven by Matzdorf was traveling 43 miles per hour and the defendant's car was traveling 75 miles per hour just prior to impact.

The jury found the defendant guilty of all six counts. On August 14, 1998, the trial court denied the defendant's posttrial motion. During the sentencing hearing, the prosecutor asked that the probation officer's calculation that the defendant had spent 302 days in custody awaiting trial be disregarded because the defendant was out on bond for most of that time. The trial court agreed with the prosecutor, stating:

> "[A]s I recall the bond in this case, it was in essence a 24 hour curfew as far as the bond after release from the jail, after posting bond; is that correct?"

Defense counsel agreed.

During the sentencing hearing, the State presented one witness in aggravation, Aurora police officer Mark J. Butler. Butler testified that, on September 27, 1997, he stopped and arrested the defendant for driving 84 miles per hour in a 30-mile-per-hour zone. The defendant did not have his driver's license at the time because he was driving on a ticket for another moving violation. Butler stated that the defendant was very agreeable.

The presentence report indicated that the defendant had three prior convictions of misdemeanor battery and one conviction of criminal trespass to residence, all in 1992 and 1993. Alcohol was a factor in these incidents. The defendant had three orders of protection entered against him for three different women. The defendant had two pending battery charges for arrests made in May and August 1997. The defendant also had been convicted of speeding in 1996 in Texas and Oklahoma. After interviewing the defendant, an alcoholism evaluator diagnosed the defendant as a "Significant Risk."

Several of the victims' family members spoke of their grief and loss. Two witnesses testified on behalf of the defendant. A former coworker and a longtime friend of the defendant testified that the defendant was not a violent person and showed no signs of an alcohol problem. The defendant also presented letters of support written by longtime friends of the defendant, indicating that the defendant had a good character. The defendant then apologized to the victims' families, stating, "[I]f I could take the place of the victims, I would."

In imposing sentence the court recognized the defendant's good work record and that he had started an alcohol abuse program. The trial court also noted the serious harm caused by the accident, the defendant's history of three battery convictions and traffic offenses,

the number of people killed, and the need to deter others. The trial court then sentenced the defendant to two concurrent terms of 13 years' imprisonment for the convictions entered on counts I and II. The trial court entered judgment on the remaining four counts but did not sentence the defendant for the convictions.

The trial court also ordered the defendant to pay restitution to the victims' families for emergency medical service costs and funeral and burial expenses in one lump sum within two years of his release. Because the State did not present proof of the costs and expenses, the trial court ordered the State to obtain proof of expenses and prepare a restitution order within 14 days. This order was entered August 14, 1998.

On August 24, 1998, the defendant filed a motion to reconsider sentence, arguing that the term was excessive. The trial court denied the motion, and, on September 22, 1998, the defendant filed a notice of appeal.

On January 14, 1999, the trial court ordered the defendant to pay the victims' family members a total of $27,870.98 "in a single installment within two years of the Defendant's release." The order concluded, "Entered at Waukegan Illinois, *Nunc Pro Tunc*, August 14, 1998, this 14th day of January, 1999."

On appeal, the defendant first argues that the sentence of two concurrent 13-year terms is excessive given his high rehabilitative potential and unextraordinary nature of the offense. The State argues that the trial court did not abuse its discretion in sentencing the defendant. We agree with the State.

■ Reckless homicide is normally a Class 3 felony (720 ILCS 5/9—3(d)(2) (West 1996)), but it becomes a Class 2 felony when the defendant commits the offense while under the influence of alcohol (720 ILCS 5/9—3(e) (West 1996)). The sentencing range for a term of imprisonment for a Class 2 reckless homicide conviction is 3 to 14 years. 720 ILCS 5/9—3(e) (West 1996).

■ When sentencing a defendant, the trial court must carefully weigh both the mitigating and aggravating factors to reach a fair and just result based on the particular circumstances of the offense and the defendant. *People v. Palmer*, 162 Ill. 2d 465, 483-84 (1994). We will not deem a sentence within the statutory range excessive unless it varies greatly with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. Because the trial court is in the best position to create a sentence that balances the need to protect society with the rehabilitation of the defendant, we will not disturb a trial court's sentencing decision unless it is an abuse of that discretion. *People v. Spencer*, 303 Ill. App. 3d 861, 871 (1999).

■ After carefully reviewing the record of the sentencing hearing, we conclude that the trial court properly considered the appropriate factors in aggravation, such as the defendant's repeated history of speeding and violent behavior while under the influence of alcohol. The trial court also appropriately considered the seriousness of the offense and the fact that four people died as a result of the defendant's conduct. The defendant's sentence was less than the 14-year statutory maximum for the offense, even though the defendant caused the death of four people. Therefore, we find no abuse of discretion in the trial court's sentencing decision. See *People v. Barker*, 298 Ill. App. 3d 751, 755 (1998) (a 13-year sentence for reckless homicide held not to be an abuse of discretion when the defendant, while under the influence of alcohol and traveling 70 miles per hour, ran a red light, striking and killing a woman in another vehicle).

The defendant argues that his sentence is excessive because he did nothing more than make two common driving errors, speeding and running a red light, and there would have been no accident "[i]f the Toyota had not been in the intersection at the precise moment that it was." These arguments are absurd at best and disingenuous at worst. It is like arguing that a murder would not have happened if the victim had not been standing in front of a loaded gun aimed and shot in his direction.

■ Next, the defendant, citing section 5—8—7(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5—8—7(b) (West 1996)), urges this court to remand this case to allow the trial court to determine whether the defendant should have received credit for the time he spent out on bond awaiting trial with the condition that he remain in his home. The defendant acknowledges that defense counsel failed to raise the issue, but he argues that this constituted ineffective assistance of counsel or that the trial court should have considered the issue *sua sponte*. We disagree with the defendant.

The record indicates that the trial court did consider the issue and properly determined that its previous order that the defendant remain at home while released on bond was a condition of his release and not custodial. During the sentencing hearing, the prosecutor requested that the probation officer's calculation that the defendant spent 302 days in custody awaiting trial be disregarded because the defendant was released on November 24, 1997, 34 days after his arrest. After discussing the issue, the trial court agreed with the prosecutor, and then defense counsel agreed with the trial court.

Further, we determine that the trial court did not err in finding that the defendant was not entitled to credit for the time he spent at home after his release on bond.

Section 5—8—7(b) provides:

> "The offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for time *spent in custody* as a result of the offense for which the sentence was imposed, at the rate specified in Section 3—6—3 of this Code. Except when prohibited by subsection (d), the trial court may give credit to the defendant for time spent in *home detention* \*\*\* if the court finds that the detention or confinement was *custodial*." (Emphasis added.) 730 ILCS 5/5—8—7(b) (West 1996).

Although section 5—8—7 does not define "home detention," section 5—8A—2(C) of the Electronic Home Detention Law (730 ILCS 5/5—8A—2(C) (West 1996)) makes clear that the defendant in this case was not on home detention within the meaning of the Code. Home detention is defined as:

> "[T]he confinement of a person convicted or charged with an offense to his or her place of residence under the terms and conditions established by the supervising authority." 730 ILCS 5/5—8A—2(C) (West 1996).

A supervising authority is an "officer or agency charged with authorizing and supervising the home detention." 730 ILCS 5/5—8A—2(E) (West 1996). Because the defendant in this case was released on his own and not under the supervising authority of any officer or agency or even electronically monitored, the requirement that he remain at home was a condition of his release and not custodial. Therefore, the trial court did not err by failing to give the defendant credit for this time.

■ Next, the defendant argues that his convictions for counts VII, VIII, XI, and XII must be vacated under the one-act-one-crime rule. Judgments of conviction were entered for these counts as well as counts I and II. However, the defendant was sentenced only for counts I and II. The State argues that the defendant waived this issue by failing to raise it below. Yet, the State concedes that, notwithstanding waiver, the trial court should have vacated these convictions.

We agree with the State that the defendant has waived this argument because he failed to raise the issue at trial and in a written posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, we choose to address the argument under the plain error doctrine because the defendant's convictions affect his substantial rights. See *People v. Smith*, 183 Ill. 2d 425, 430 (1998).

It is uncontroverted that the defendant's convictions for counts VII, VIII, XI, and XII were based on the same physical act as the convictions for counts I and II. Thus, we vacate the convictions for counts VII, VIII, XI, and XII. See *People v. Duncan*, 261 Ill. App. 3d 957, 959 (1994).

■ Finally, the defendant argues that the trial court erred by ordering him to pay $27,870.98 in a lump sum in restitution without properly considering his ability to pay. The State contends that the trial court did not abuse its discretion. We agree with the defendant.

When deciding whether a defendant must pay restitution, a trial court need not consider the defendant's ultimate ability to pay. However, the trial court must consider the defendant's ability to pay when determining the *method and time* of payment. *People v. Sams*, 238 Ill. App. 3d 825, 829 (1992); *People v. Mitchell*, 241 Ill. App. 3d 1094, 1098-99 (1993); 730 ILCS 5/5—5—6(f) (West 1996). Section 5—5—6(f) of the Code provides:

> "Taking into consideration the ability of the defendant to pay, the court shall determine whether restitution shall be paid in a single payment or in installments, and shall fix a period of time not in excess of 5 years, not including periods of incarceration, within which payment of restitution is to be paid in full. However, if the court deems it necessary and in the best interest of the victim, the court may extend beyond 5 years the period of time within which the payment of restitution is to be paid. If the defendant is ordered to pay restitution and the court orders that restitution is to be paid over a period greater than 6 months, the court shall order that the defendant make monthly payments; the court may waive this requirement of monthly payments only if there is a specific finding of good cause for waiver." 730 ILCS 5/5—5—6(f) (West 1996).

Here, on August 14, 1998, the trial court ordered the defendant to pay the victims for medical and burial expenses without knowing the amount of such costs. At the time of this order, the State had not submitted proof of these costs and expenses. Yet, the trial court ordered the defendant to pay the unknown amount in one lump sum within two years of his release from prison. It was well after the trial court denied the defendant's posttrial motion that the State presented the court with proof of the victims' costs and expenses. The trial court then ordered the defendant to pay the victims' families $27,870.98. This order was entered "*Nunc Pro Tunc*, August 14, 1998, this 14th day of January, 1999." Thus, the trial court did not know the amount of the victims' costs and expenses when it first ordered the defendant to make restitution within two years of his release from prison. Without knowing the amount to be repaid, the trial court could not have considered the defendant's ability to pay. Accordingly, we remand this cause for a hearing regarding the defendant's ability to pay the victims' costs and expenses. We note that, on remand, the trial court is not limited in setting the amount of payment or the time period in which it must be paid.

We also note that the order was improper as a *nunc pro tunc* order because the January 14, 1999, order did not make the record speak for something that was done previously. See *In re Marriage of Breslow*, 306 Ill. App. 3d 41, 53-54 (1999). Rather, it added new findings into the record.

The State claims that the defendant waived this issue by failing to raise it in a posttrial motion. We find this claim wholly without merit. More than 30 days had passed between the date of final judgment in this case and the date on which the State presented the court with proof of the victims' costs and expenses. Thus, the State's claim of waiver fails.

We also find *People v. Brooks*, 158 Ill. 2d 260 (1994), a case cited by the State, completely distinguishable. In *Brooks*, the defendant argued only that the time period for repayment ordered by the trial court did not comply with the time limitation set forth in section 5—5—6(f) of the Code. Further, unlike the case at bar, there is no indication that the *Brooks* court did not know the amount of restitution to be paid before entering its order. Thus, *Brooks* is not controlling here.

For these reasons, we affirm the decision of the circuit court of Du Page County regarding the sentencing of the defendant; we vacate the defendant's convictions of counts VII, VIII, XI, and XII; and we reverse the trial court's January 14, 1999, order regarding the amount, time, and manner of the payment of restitution and remand the cause for a hearing regarding the defendant's ability to pay.

Affirmed in part, vacated in part, and reversed in part; cause remanded.

GEIGER and RAPP, JJ., concur.