THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT N. BOUYER, Defendant-Appellant.

Second District    No. 2—00—1158

Opinion filed April 26, 2002.

157

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.

Gary W. Pack, State's Attorney, of Woodstock (Martin P. Moltz and Richard S. London, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Robert Bouyer, appeals the circuit court's order sentencing him to five years' imprisonment after the court revoked his probation. Defendant contends that the five-year sentence was an abuse of discretion because it resulted solely from defendant's failure to abide by an improper agreement with the trial court whereby defendant would not be imprisoned as long as he paid restitution in monthly installments.

In 1997, defendant pleaded guilty to two counts of burglary (720 ILCS 5/19—1(a) (West 1996)). In exchange for the plea, the State recommended a sentence of 30 months' probation and dismissed other charges. Defendant also agreed to pay restitution.

The factual basis for defendant's plea was that he and a codefendant, Bishop, entered a Menard's store and took various items. Defendant and Bishop also entered a truck belonging to Sheetz Lawn Service and took various items. Defendant and Bishop were both represented by the same assistant public defender, Michael Barrett.

The trial court found that the plea was voluntary and imposed the agreed-upon sentence. Because defendant wanted to return to Texas, the court agreed to waive his presence at a scheduled hearing to set the amount of restitution (as long as defendant did not dispute the amount).

On August 21, 1997, Barrett sought to continue the restitution hearing so that he could send a copy of the report to defendant in Texas. The court stated, "I want you to understand that Mr. Bishop, because of his financial circumstances[,] is unable to pay, I want Bouyer to shoulder the whole load." Barrett responded, "I understand." Bishop was subsequently sentenced to prison.

On January 21, 1998, the prosecutor told the court that the parties had been unable to agree on the amount of restitution and asked for a date for a contested hearing. The court asked, "[A]re we doing an exercise in futility or what?" Barrett responded, "The co-defendant who would be held responsible for the entire amount is in Texas and is a stocker at a grocery store earning $6 an hour." After some further colloquy, the court stated, "I'm setting a date. I'm not going to put up with this nonsense. I have two people that basically are judgment proof contesting it."

On April 16, 1998, Barrett again appeared on behalf of defendant and Bishop. Barrett said that Bishop, who was still in prison, had agreed to be jointly and severally liable with defendant for $6,603.04, spread among five victims. Barrett also said that he had sent defendant a letter informing him that if he failed to appear for the hearing judgment could be entered against him. Barrett had not heard from

defendant. The court thus entered judgment against defendant and Bishop jointly and severally.

On October 19, 1998, the State petitioned to revoke defendant's probation, alleging that he had tested positive for cannabis twice and had committed disorderly conduct in Texas. A warrant was issued for defendant's arrest.

Eventually defendant completed an affidavit of assets and liabilities that showed he lived with his mother and brother and had been employed as a cook earning $150 per week. His employment ended when he was arrested on the warrant. Defendant listed his assets as $22.36. On February 9, 1999, defendant appeared in court and admitted to the allegations that he tested positive for marijuana. No agreement on a sentence was made.

Barrett asked that defendant be released on bond so that he could go back to Texas. He added that the parties had agreed to postpone the sentencing hearing for three months, during which time defendant would pay $300 per month toward restitution. The court accepted defendant's admission and revoked his probation. The court stated, "It's contemplated that if in fact those payments are current on May 11th that we would continue the sentencing for approximately another three months. If they were not current we would proceed with the sentencing. Do you understand?" Defendant responded that he did.

On May 11, 1999, Barrett reported that defendant had made three $300 payments since the revocation and the court accordingly continued the sentencing hearing for another three months. On August 10, the State reported that defendant was "a little short" on his payments. The court suggested that if defendant was "still a little short in three months he's going to have a problem."

On November 10, 1999, Barrett reported that defendant's family had made a $900 payment by credit card to make defendant current with his payments. The court continued the hearing for three more months. Defendant's sister made a $600 debit card payment on February 10 to again make defendant current, so the hearing was continued again.

On June 8, 2000, the court was informed that defendant had not made his payments. Public defender Chris Harmon told the court that he had left two messages for defendant. The court issued a bench warrant and continued the cause to determine whether defendant should be sentenced *in absentia*.

One week later, Harmon reported that he had spoken to defendant's sister, but not to defendant, who had failed to return his calls. According to Harmon, defendant's family members had told him that

morning that they wanted to pay off all of defendant's fines, costs, and restitution, but had "some disagreement with the amount that's reflected on the finance screen." The court told Harmon, "I guess they better come up and argue it." The court ordered defendant to be served with notice of the sentencing hearing and ordered that a pre-sentence report be prepared. In response to Harmon's question, the court stated, "My position has always been up to this date that if— and because that was the agreement that was entered into by everybody, if the man paid off the thing, the case would be terminated."

The court expressed its belief that defendant or his family wanted to renegotiate the restitution agreement. Harmon said, "They're not dickering with what's—They're thinking they have possibly paid more than what's reflected on the sheet." The court said that it would only credit defendant's account if his family had receipts with the case number on them. Then the following colloquy occurred:

"THE COURT: No. I don't think the deal is off. I think that I just don't want to—You see, what Mr. Bouyer wants me to do is negotiate with him now, and I don't want to do that. Time for negotiation is all done.

MR. HARMON: Actually it's not Mr. Bouyer. I believe it's Mr. Bouyer's family.

THE COURT: Mr. Bouyer is the one who's going to pay the price, not his family.

MR. HARMON: Exactly.

THE COURT: Well, nonmonetary price."

On August 31, over Harmon's objection, the trial court held a sentencing hearing. In mitigation, counsel noted that defendant was legally blind, could not obtain a driver's license, and was unemployed. He had applied for social security disability but was turned down. Harmon also observed that Bishop, not defendant, was the instigator of the criminal conduct. Commenting that defendant had "not kept his part of the bargain," the prosecutor asked for a seven-year prison sentence.

A dispute arose about the extent of defendant's disability and the court commented that it did not know the answer because defendant had not come to court. Harmon replied that defendant's parents intended to pay off the debt by credit card, which did not necessitate defendant coming to court from Texas.

The court sentenced defendant to five years' imprisonment. In imposing the sentence the court stated as follows:

"I do not know what the status of his blindness is or his sight is today, and have not known it for approximately two years because he refuses to come to this court, I guess since January 21st of

1999—strike that—February 9th of 1999, when he was granted a personal recognizance bond, and part of that recognizance bond was an agreement by him to pay a minimum of three hundred dollars a month toward restitution.

So, I can only take it that he is able to pay that restitution as he agreed, because I have not seen anything to show that he cannot pay that restitution.

The Court finds that based on his willful violation of the terms and conditions of his probation that I will revoke his probation, and further finds that additional probation or conditional discharge would deprecate the seriousness of his conduct and be inconsistent with the ends of justice."

Defendant filed a timely notice of appeal. He contends that the trial court abused its discretion in imposing a five-year prison sentence where the sentence was apparently based, not on the conduct for which he was originally sentenced to probation, but on his failure to comply with a separate agreement with the trial court to pay restitution.

■ Generally, a reviewing court may not overturn the sentence the trial court imposed unless that court abused its discretion. *People v. Visor*, 313 Ill. App. 3d 567, 573 (2000). However, the consideration of an improper aggravating factor is an abuse of discretion that requires resentencing unless the factor was an insignificant element of the sentence. *People v. McPhee*, 256 Ill. App. 3d 102, 114 (1993); *People v. Joe*, 207 Ill. App. 3d 1079, 1085 (1991). After revoking probation, a trial court can consider the crime that resulted in the revocation and defendant's conduct during the probationary period only as evidence of his or her rehabilitative potential. *People v. Bedenkop*, 252 Ill. App. 3d 419, 424-25 (1993). The new sentence, however, cannot punish the defendant for anything other than the original underlying offense. *People v. Witte*, 317 Ill. App. 3d 959, 963 (2000).

■ Here, the trial court's actions and comments throughout the proceedings make clear that defendant was punished primarily for falling behind in his restitution payments. After revoking defendant's probation on February 9, 1999, the court did not resentence him, but continued the case for three-month intervals as long as defendant or his family paid $300 per month toward restitution. The court expressly stated that it would consider the case "terminated" if defendant paid all his obligations. The court thus expressed its opinion that defendant was not a threat to society and deserved to continue on probation as long as he continued paying restitution.

On August 31, 2000, however, the court sentenced defendant to five years' imprisonment, finding that probation would "deprecate the

seriousness of his conduct." The only thing that had changed since the previous hearing was that defendant had fallen behind in paying restitution. In imposing the sentence, the court never mentioned the conduct for which defendant was originally placed on probation or, for that matter, the conduct for which his probation was revoked. The court referred only to the defendant's "willful" failure to pay restitution. It is thus clear that the court imprisoned defendant for failing to pay restitution.

Courts have disapproved of the practice of making a defendant's sentence contingent upon his ability to pay restitution. In *People v. Short*, 66 Ill. App. 3d 172 (1978), the court held that the trial court improperly conditioned defendants' probation on their ability to borrow from their parents to make immediate restitution. *Short*, 66 Ill. App. 3d at 175-76. Noting that that consideration related to neither the seriousness of the offense nor defendants' rehabilitative potential, the court stated that it "would be patently unjust to deny probation because of an apparent inability to make immediate restitution." *Short*, 66 Ill. App. 3d at 176.

In *People v. Harpole*, 97 Ill. App. 2d 28, 34 (1968), the court stated that where "restitution becomes the ultimate criterion for imposition or relaxation of punishment, as we believe occurred in the instant case, a theory of penology is propounded which predicates punishment upon the inability of the offender to make monetary payment for his misconduct." In *People v. Hancock*, 143 Ill. App. 3d 1027, 1032 (1986), this court held that a defendant could not be conditionally sentenced to prison if he failed to pay restitution.

This case is in some ways similar to *Short*. It became clear during the protracted proceedings that the payments were actually coming from members of defendant's family. Thus, defendant's freedom was conditioned on his family's willingness to continue making the payments.

We note that the trial court's remarks during sentencing that defendant's probation was being revoked as a result of his "willful failure" to comply with the probation condition requiring restitution were incorrect. The court had already revoked defendant's probation on February 9, 1999. Thus, defendant is correct in arguing that restitution was no longer a condition of probation after that date. The State never sought to revoke probation based on a failure to pay restitution.

Moreover, there is no support in the record for the trial court's statement that defendant's failure to pay was wilful. If the State *had* sought to revoke probation based on the failure to pay restitution, it would have had to prove both that defendant was able to pay restitution and that his failure to do so was wilful. See *People v. Davis*, 216

Ill. App. 3d 884, 888 (1991). This is because the constitution prohibits imprisonment for debt. *In re C.A.H.*, 218 Ill. App. 3d 577, 582 (1991), citing Ill. Const. 1970, art. I, § 14. It is true that in *People v. Clark*, 268 Ill. App. 3d 810 (1995), where defendant did not attend the hearing, the court properly presumed that his failure to pay restitution was wilful. However, *Clark* is distinguishable because the information available showed that defendant had been making a steady income but had made *no* payments toward his obligations. Defense counsel did not offer an explanation for defendant's failure to meet his obligations. *Clark*, 268 Ill. App. 3d at 815.

Here, the information available in the record strongly indicates that defendant did not wilfully refuse to make payments. Initially, it appears that defendant was able to pay, at least with the help of his family. In fact, defendant and his family had already paid nearly half the total amount due. We are aware of no authority that the capacity to borrow from relatives is not a proper consideration in determining the *ability* to pay. However, where, as here, the family balks at making further payments, it does not necessarily follow that defendant wilfully refused to pay.

A defendant must be sentenced for his own conduct, not that of his family. *In re M.W.*, 246 Ill. App. 3d 654, 659 (1993); *Joe*, 207 Ill. App. 3d at 1086-87. The trial court had earlier stated, however, that defendant would pay the "nonmonetary price" for his family's contesting the amount of restitution it had paid.

Moreover, the record does not support the conclusion that defendant was able to continue making the payments without his family's assistance. At the outset of the case, the court expressed its belief that defendant was "judgment proof." In a financial affidavit defendant listed his assets as approximately $22. The presentence report, which the prosecutor said he did not dispute, shows that defendant is legally blind and cannot get a driver's license. At best, he worked at a series of low-wage jobs. At the sentencing hearing, his attorney represented that defendant was unemployed.

The State is correct that most of this information was technically hearsay, much of it coming from defendant's attorneys. However, the rules of evidence are relaxed at a sentencing hearing. *People v. Blanck*, 263 Ill. App. 3d 224, 234 (1994). Moreover, the State did not dispute any of the information about defendant and did not present any evidence that he was wilfully refusing to pay.

In summary, the trial court revoked defendant's probation on February 9, 1999. The court agreed with defendant to defer sentencing as long as defendant paid restitution in installments. The court then sentenced defendant to prison for five years, not for the conduct for

which he was originally placed on probation, but for failing to abide by the arrangement with the court and with no determination that defendant was wilfully refusing to pay.

The State argues that the trial court appropriately sentenced defendant for failing to appear in court and failing to present evidence "to mitigate his actions." The State's argument is disingenuous because a defendant has no duty to present mitigating evidence at a sentencing hearing and should not be penalized for failing to do so. In any event, the evidence that defendant supposedly failed to present—relating to whether his failure to pay restitution was wilful—was of limited relevance. As noted above, the purpose of the hearing was to resentence defendant for the burglaries to which he originally pleaded guilty (see *Witte*, 317 Ill. App. 3d at 963), not to assess his conduct while on probation. While such conduct is relevant to a defendant's rehabilitative potential, it cannot be the sole basis for the sentence following a revocation of probation. The State does not address at all the issue whether five years' imprisonment was an appropriate sentence for the underlying burglaries.

The State also argues that defendant was properly punished for failing to come to court. The trial court's remarks demonstrate that this was also a factor in the sentence. While we do not condone defendant's failure to come to court, this single aggravating factor does not support a five-year sentence.

We note that defendant's nonappearance is mitigated by several factors. Initially, it is not completely clear that defendant's failure to attend court was wilful or, as defense counsel suggested, the result of his disability and indigence. In any event, we note that early on in the proceedings the trial court agreed to allow defendant's probation to be transferred to Texas and to excuse his presence at the restitution hearing. Subsequently, the court continued to tolerate defendant's absence as long as the restitution payments were current. Defendant had no notice that his failure to attend court on this one occasion would be dealt with much more harshly.

The presentence report shows that defendant's criminal record is not lengthy. In addition to the offenses at issue, he had one conviction of unlawful possession of a stolen motor vehicle for which he also received probation, and a subsequent conviction in Texas of theft for which he spent seven days in jail. The sole fact that defendant failed to attend court one time does not justify a sentence of five years' imprisonment. Thus, the sentence must be vacated and the cause remanded for resentencing.

Defendant raises several arguments about the original restitution order. Defendant's apparent purpose is to further demonstrate the

unfairness of jailing him for not paying restitution when he was never properly required to pay restitution in the first place. Although we have resolved the primary issue in defendant's favor, we address these issues to the extent they may arise on remand.

Defendant contends that the original restitution order was entered in his absence and without regard to his ability to pay. The State responds that defendant waived any objection to the restitution order and in fact requested that he be excused from the hearing and stipulated to the amount due. Defendant also contends, however, that his counsel at the time, Barrett, had a conflict of interest because he also represented the codefendant, Bishop.

■ The right to the effective assistance of counsel (U.S. Const., amend. VI) entitles a criminal defendant to the undivided loyalty of counsel, free from conflicting interests or inconsistent obligations. *People v. Sims*, 322 Ill. App. 3d 397, 410 (2001). The joint representation of codefendants can give rise to a conflict of interest. To prevail on a claim of ineffective assistance of counsel due to joint representation, the defendant must establish that an actual conflict of interest affected his attorney's performance. *People v. Spreitzer*, 123 Ill. 2d 1, 17 (1988); *People v. Murry*, 305 Ill. App. 3d 311, 315 (1999).

■ Here, it does appear that Barrett labored under conflicting loyalties during the proceedings that resulted in the restitution order. Although the governing statute requires that each codefendant shall bear his or her *pro rata* share of restitution (730 ILCS 5/5—5—6(c)(3) (West 2000)), Barrett agreed that defendant would be responsible for the entire amount. Although the order made Bishop jointly and severally liable, it does not appear that any arrangement was made for him to pay anything.

Plaintiff also contends that the trial court did not determine his ability to pay before ordering restitution. However, a trial court need not consider a defendant's ability to pay when initially ordering restitution. It must consider defendant's ability to pay only when setting the time and manner of payment. 730 ILCS 5/5—5—6(f) (West 2000); *Visor*, 313 Ill. App. 3d at 576. As noted previously, there is no authority prohibiting the court from considering a defendant's ability to borrow from relatives or others in order to meet his obligations.

Because this cause is being remanded for resentencing, we do not further consider these issues. On remand, the trial court is directed to ensure that defendant is represented by conflict-free counsel. If the court elects to make restitution part of the new sentence, the court should set a payment schedule taking into account defendant's ability to pay.

The circuit court's sentencing order is reversed, and the cause is remanded for resentencing.

Reversed and remanded with directions.

McLAREN and BYRNE, JJ., concur.