No. 2-20-0152
Order filed October 15, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-4 |
| ANDY VAZQUEZ, | ) ) ) | Honorable Victoria A. Rosetti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Birkett and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not resentence defendant to a term of imprisonment as a penalty for his conduct while on probation. Further, the appellate court declined to use its authority under Illinois Supreme Court Rule 615(b)(4) to reduce defendant's prison sentence as it was not excessive.

¶ 2    On September 4, 2018, defendant, Andy Vazquez, pleaded guilty to one count of second-degree murder (720 ILCS 5/9-2(a)(1) (West 2016)) and was sentenced to 48 months of intensive probation with 40 months of periodic imprisonment. Both the plea and the sentence were fully negotiated. On March 14, 2019, the State filed a petition for revocation of probation. Defendant admitted to two of the counts in the petition. A resentencing hearing followed. The trial court

resentenced defendant to eight years' imprisonment. Following the denial of defendant's motion for a new sentencing hearing, he appeals. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On December 30, 2017, defendant and his girlfriend, Stephanie Rodriguez, hosted a birthday party for their three-year-old son at defendant's North Chicago apartment. In attendance, among others, were Daniel Arriaga, who was defendant's best friend, and Arriaga's three-year-old daughter. According to defendant's statement to police, around 11 p.m., Rodriguez noticed that Arriaga and his daughter had been in the bathroom for a while. Defendant went to check on them. When defendant opened the bathroom door, he purportedly saw Arriaga sexually assaulting his own daughter. Arriaga was asked to leave the party but soon returned. Arriaga swung at defendant and defendant then "beat the f*** out of" Arriaga outside of the apartment. When the police arrived early the following morning, they found Arriaga incapacitated in the cold. He had been severely beaten. His eyes were swollen shut, his pants were down, and he later died from a combination of blunt force trauma and hypothermia.

¶ 5     Defendant pleaded guilty to one count of second-degree murder. He received a sentence of intensive probation with periodic imprisonment. He had to abide by a variety of rules, including adhering to a curfew, abstaining from possession or consumption of drugs, and following additional rules related to his work release program. Approximately six months into defendant's sentence, the State filed a petition for revocation, citing multiple probation violations. The petition alleged that defendant tested positive for cannabis and benzodiazepine. Other allegations included violating the rules and regulations of the Lake County Community Based Corrections by being absent without authorization, interfering with staff duties, and gambling. Defendant admitted to consuming drugs and the court found that defendant was in violation as to those counts of the

State's petition. The court then ordered an updated presentence investigation report. The following evidence was presented at defendant's resentencing hearing.

¶ 6    The State introduced three witnesses in aggravation. Denise Hollingsworth, a resident field coordinator for the Lake County Sheriff's Department, testified that she explained the rules and regulations of the work release program to defendant. She informed defendant that if he ever deviated from the set work release schedule, he would need to call and explain why. She noted that, in six separate instances in October 2018, defendant returned late from his job at an auto-body shop in Skokie. In one instance he was 12 minutes late, and in another, he was 81 minutes late. Hollingsworth also testified that, on February 8, 2019, defendant was "unauthorized" for 80 minutes when he did not catch the 6:10 a.m. train to work, as he was supposed to do. Instead, defendant sat in the parking lot of the train station until 7:10 a.m., at which point he got a different ride to work.

¶ 7    Katherine Howard, another resident field coordinator for the Lake County Sherriff's Department, testified to three additional violations. The first occurred on January 4, 2019, when defendant was approximately 15 minutes late. The second occurred on February 4, 2019, when defendant made an unauthorized trip with his son to the hospital and did not return until over three hours later. A third instance on February 16, 2019, involved defendant's unauthorized leave from his workplace to visit a nearby shopping mall.

¶ 8    Corrections officer Gary McKelvy was the State's final witness in aggravation. McKelvy testified to two additional violations. First, on October 2, 2018, McKelvy caught defendant gambling. In a separate incident on November 10, 2018, defendant was insubordinate to McKelvy when the officer saw an inmate violate the rules by retrieving soda from a vending machine.

¶ 9    The defense introduced three letters and two witnesses in mitigation. The first letter, from defendant's employer, indicated that defendant was "reliable and trustworthy" as well as "punctual." The second and third letters, from defendant's mother and stepfather, respectively, attested that defendant was "respectful," "kind," and an "excellent father." The first witness in mitigation, Stephanie Rodriguez, testified that she had a son with defendant. Rodriguez and defendant had been together for 10 years. Defendant was a great father, a hard worker, and a good provider. Rodriguez corroborated defendant's claim that on February 4, 2019, she and defendant took their son to the hospital. Defendant had expressed remorse to Rodriguez in causing the victim's death. Rodriguez noted that defendant assisted his mother who was suffering from kidney failure. Defendant testified in his own behalf that he was "very remorseful for the mistake that [he] made." He asked for the minimum sentence, in part because he did not want his son to grow up without a father, as defendant had.

¶ 10    After the close of evidence, the State asked for 10 years of imprisonment. The defense asked for "the minimum."

¶ 11    In issuing its ruling, the trial court said:

"[A] court has to—even when they're resentencing someone—has to look at a number of factors. And of course the nature of the offense. And we know it's second degree murder in this case. All of the information in the presentence investigation as well as the updated presentence investigation which was prepared for the petition to revoke. I take into consideration the witnesses who testified here including [Stephanie Rodriguez]. I take into account [defendant's] statement, the letters that I received. And I also have to look at the factors in aggravation and mitigation which are set out in the statute as well as the arguments and the recommendations of the attorneys. And I have to fashion a sentence that

takes into account all of this information, but I have to take it into account, looking at the purpose of the statute for sentencing, which is rehabilitation. And so I do take all of this information into account. I may comment only on a few factors, but that doesn't mean I have not considered everything because I have."

¶ 12   The court noted that "there were at least 12 violations of the rules of periodic imprisonment which included unauthorized absences, shooting dice or gambling, being disrespectful, as well as testing positive for cannabis and benzodiazepine." The court also noted that it considered that defendant was working full-time and was supporting his child and girlfriend. The court commented that defendant had a "loving family" and that "any time someone goes to prison, there's hardship on the family and financial hardship." The court said that it "took into account the letter that [defendant's] mother wrote as well as [his] stepfather; and [defendant's] work; and the issues that [defendant's] mom faces, the medical issues." The court said that defendant was "remorseful from the day that [he] pled guilty," but also that defendant "didn't follow the rules." For these reasons, the court concluded that it could not extend his probation or impose the minimum sentence.

¶ 13   The court sentenced defendant to eight years' incarceration with credit for 719 days served. Defendant filed a motion for a new sentencing hearing, citing multiple mitigating factors and an absence of certain aggravating factors. The court denied the motion. Defendant timely appeals from the prison sentence as well as from the denial of his motion for a new sentencing hearing.

¶ 14                                    II. ANALYSIS

¶ 15   Defendant raises two issues on appeal. He first contends that the trial court improperly punished him for his conduct while on probation rather than for the offense to which he had previously pleaded guilty. He asks this court to vacate his sentence and remand the case for a new sentencing hearing. Alternatively, defendant urges that the eight-year sentence was excessive and

that this court should use its authority under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) to reduce his eight-year sentence to one closer to the statutory minimum of four years. We address each issue in turn.

¶ 16        A. The Trial Court's Resentence of Defendant on His Second-Degree Murder Charge

¶ 17        Defendant contends that the eight-year prison sentence reflects punishment for defendant's conduct while on probation rather than for the second-degree murder. Defendant emphasizes that "the court made no reference whatsoever to the offense of second-degree murder except to note that one of the factors it had to consider was the 'nature of the offense' and 'we know it's second-degree murder in this case.' " Defendant urges that *People v. Varghese*, 391 Ill. App. 3d 866 (2009), supports vacating his sentence and remanding for a new sentencing hearing. Defendant acknowledges that he did not preserve this issue for appeal, but he invokes both prongs of the plain-error doctrine and alternatively asserts ineffective assistance of counsel. Specifically, he maintains that his trial counsel was ineffective for failing to "[object] to the single-minded focus [on defendant's behavior while on probation] at the sentencing hearing" and failing to include the same issue in the motion for a new sentencing hearing.

¶ 18        The State responds that the trial court "considered the probation violations as only one of the factors which negatively reflected on defendant's lack of rehabilitative potential." The State also notes that the trial court considered numerous factors, including the original presentence investigation report and the updated version, both of which contained statements of facts for the underlying offense. The State maintains that there was no error in the trial court's consideration of the factors in resentencing, let alone an error rising to the level of plain error. According to the State, during the resentencing hearing, defense counsel strategically concentrated on defendant's

rehabilitative potential rather than the specific, gruesome, and brutal aspects of the second-degree murder offense.

¶ 19    "Generally, a reviewing court may not overturn the sentence the trial court imposed unless that court abused its discretion." *People v. Bouyer*, 329 Ill. App. 3d 156, 161 (2002). "After revoking probation, a trial court can consider the crime that resulted in the revocation and defendant's conduct during the probationary period only as evidence of his or her rehabilitative potential." *Bouyer*, 329 Ill. App. 3d at 161. "On revoking a defendant's probation, the trial court sentences him to a disposition that would have been appropriate for the original offense." *People v. Palmer*, 352 Ill. App. 3d 891, 895 (2004). "However, the sentence imposed must not be punishment for the probation violation." *People v. Risley*, 359 Ill. App. 3d 918, 920 (2005). In determining whether a trial court improperly punished a defendant for conduct while on probation, reviewing courts have looked at several factors such as whether the sentence was within the proper statutory range. *People v. Vilces*, 186, Ill. App. 3d 983, 986-87 (1989). "A sentence within the statutory range for the original offense will not be set aside on review *unless* the reviewing court is strongly persuaded that the sentenced [*sic*] imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of the revocation, and *not* for the original offense." (Emphasis in original.) *Vilces*, 186 Ill. App. 3d at 986 (quoting *People v. Young*, 138 Ill. App. 3d 130, 142 (1985)). "The record must clearly show that the [trial] court considered the original offense and imposed the sentence that would have been appropriate for the original offense." *People v. Hess*, 241 Ill. App. 3d 276, 284 (1993). To make that determination, reviewing courts may consider the remarks of the trial court during sentencing. *Vilces*, 186 Ill. App. 3d at 987.

¶ 20    Plain-error is a narrow exception to forfeiture. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). A defendant must first show that a "clear or obvious" error occurred. *Hillier*, 237 Ill. 2d at 545. "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545.

¶ 21    The record reflects that the trial court resentenced defendant on his second-degree murder charge, rather than on his probation violations. Initially, we note that defendant's sentence was within the 4-to-20-year sentencing range. 730 ILCS 5/5-4.5-30(a) (West 2016). The trial court specifically noted that it considered the presentence report and the updated report, both of which contain detailed factual descriptions of the conduct forming the basis for the charge of second-degree murder. Indeed, the trial court noted that it considered "the nature of the offense *** second degree murder." Additionally, the court explained: "I may comment only on a few factors, but that doesn't mean I have not considered everything because I have." Despite the trial court's discussion of the various violations defendant committed while on probation, it also noted that "the purpose of the statute for sentencing *** is rehabilitation." Thus, the court appropriately considered defendant's conduct while on probation when assessing defendant's rehabilitative potential, but the court did not sentence him for that conduct.

¶ 22    In *Varghese*, the defendant was sentenced to two years of sex offender probation after he pleaded guilty to aggravated criminal sexual abuse. *Varghese*, 391 Ill. App. 3d at 868. The defendant admitted to sexually abusing a 13-year-old girl in his car in a parking lot. *Varghese*, 391 Ill. App. 3d at 868. Following his guilty plea, the State petitioned to revoke the defendant's probation. *Varghese*, 391 Ill. App. 3d at 868. Defendant was stopped for driving on a suspended license while he was allegedly on his way to meet a 16-year-old girl. *Varghese*, 391 Ill. App. 3d at

868. Defendant admitted that he violated his probation by driving while his license was suspended. *Varghese*, 391 Ill. App. 3d at 868. During the resentencing hearing, defendant denied that he knew that he was meeting up with a 16-year-old girl. *Varghese*, 391 Ill. App. 3d at 877. Nevertheless, the trial court concluded that the defendant attempted to meet up with the 16-year-old girl. *Varghese*, 391 Ill. App. 3d at 877. The trial court also noted, immediately prior to imposing a seven-year prison sentence, that "this conduct is intolerable. This conduct is dangerous." *Varghese*, 391 Ill. App. 3d at 877. On appeal, in vacating the sentence and remanding for a new sentencing hearing, this court reasoned: "That the trial court's final sentencing determination immediately followed this statement and a lengthy discussion about the certainty of the uncharged conduct strongly indicates that defendant was sentenced for such particular 'dangerous' and 'intolerable' uncharged conduct." *Varghese*, 391 Ill. App. 3d at 877. Further, "with only a passing reference to defendant's original offense, it is apparent that the trial court improperly commingled defendant's conduct while on probation with his original offense." *Varghese*, 391 Ill. App. 3d at 877.

¶ 23    Unlike in *Varghese,* here, other than mentioning defendant's admitted drug consumption while on probation, the court considered what the parties now agree were "minor," non-criminal infractions. There is no reason to suspect that the court sentenced defendant to eight years in prison for non-criminal behavior. To the contrary, the record indicates that the court sentenced defendant for second-degree murder, not for his probation violations. Because there is no error here, there is no plain error. See *Hillier*, 237 Ill. 2d at 545 (A defendant must first show that a "clear or obvious" error occurred.).

¶ 24    Turning to defendant's alternative argument, under the two-prong test of *Strickland*, to succeed on a claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defendant.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Defendant likewise did not receive ineffective assistance of counsel; in the absence of error by the trial court, defendant cannot show that his counsel's performance was deficient or that any deficiency resulted in prejudice.

¶ 25                    B. Illinois Supreme Court Rule 615(b)(4)

¶ 26    Defendant argues that the eight-year sentence is excessive and asks this court to use its authority under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) to reduce his sentence. Defendant points to certain statutory and non-statutory mitigating evidence including that defendant was a first-time felony offender, the circumstances surrounding the second-degree murder indicate that it is not a situation likely to recur, he showed remorse, he has always been willing to work, and he has a close family who loves and supports him. Specifically, defendant argues that "a lower sentence will better reflect the mitigating evidence in this case." He requests that this court reduce his prison sentence to one closer to the statutory minimum of four years. 730 ILCS 5/5-4.5-30(a) (West 2016).

¶ 27    The State responds that, "given defendant's demonstrated lack of rehabilitative potential, the trial court did not abuse its discretion in re-sentencing defendant." According to the State, defendant "simply assesses the weight of the factors differently than did the sentencing judge." The State notes that "a reviewing court is not to substitute its judgment for that of the trial court merely because it would have balanced the sentencing factors differently."

¶ 28    It is well settled that the trial court has broad discretionary powers in imposing a sentence (*People v. Fern*, 189 Ill. 2d 48, 53 (1999)), and the trial court's sentencing decision is entitled to great deference (*People v. Perruquet*, 68 Ill. 2d 149, 154 (1977)). The trial court is generally in a better position than the reviewing court to determine the appropriate sentence. The trial judge has the opportunity to weigh such factors as the "defendant's credibility, demeanor, general moral

character, mentality, social environment, habits, and age." *Perruquet*, 68 Ill. 2d at 154. Consequently, the "reviewing court must not substitute its judgment for that of a sentencing court merely because it would have weighed the factors differently." *People v. Streit*, 142 Ill. 2d 13, 19 (1991). Although the trial court is vested with wide discretion in sentencing, such discretion is not without limitation. *Streit*, 142 Ill. 2d at 19. Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) grants the reviewing court the power to reduce the sentence imposed by the trial court. Absent an abuse of discretion by the trial court, the sentence may not be altered on review. *Perruquet*, 68 Ill. 2d at 153. For example, "a sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Fern*, 189 Ill. 2d at 54.

¶ 29     Based on the above principles, we decline to reduce defendant's sentence. Defendant faced a prison sentence of 4 to 20 years. 730 ILCS 5/5-4.5-30(a) (West 2016). Defendant's eight-year sentence for the second-degree murder of his best friend is not manifestly disproportionate to the nature of the offense. Here, defendant admitted to beating "the f*** out of" Arriaga. Arriaga died from a combination of blunt force trauma and hypothermia after the police found him incapacitated, in the cold, with his eyes swollen shut and pants down. Defendant's 12 probation violations in approximately six months reflect poorly on his rehabilitative potential. The record shows that the trial court considered the mitigating and aggravating factors. Defendant's eight-year prison sentence was not an abuse of discretion.

¶ 30                                    III. CONCLUSION

¶ 31     For the foregoing reasons, we affirm.

¶ 32     Affirmed.