THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROY G. VARGHESE, Defendant-Appellant.

Second District    No. 2—07—0217

Opinion filed June 5, 2009.

BURKE, J., dissenting.

Patricia Unsinn and Erin E. McFeron, both of State Appellate Defender's Office, of Chicago, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, and Lawrence M. Bauer and Barry W. Jacobs, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Roy G. Varghese, appeals his seven-year sentence imposed by the circuit court of Du Page County. Defendant entered a fully negotiated plea of guilty to the offense of aggravated criminal sexual abuse (720 ILCS 5/12—16(d) (West 2004)). In exchange for his plea, he received 2 years of sex offender probation and 28 days in jail. Subsequently, the trial court granted the State's petition to revoke defendant's probation and resentenced him to a seven-year term of imprisonment. Defendant appeals, contending, *inter alia*, that the evidence admitted against him at his resentencing hearing was irrelevant and unreliable. He also contends that the trial court erred when it resentenced him, because it punished him for his conduct while on probation rather than strictly for his original offense. We vacate defendant's sentence and remand for resentencing.

In April 2004, defendant was charged with multiple counts of aggravated criminal sexual abuse stemming from allegations that he met a 13-year-old girl in an Internet chat room and then engaged in various sexual acts with her in the parking lot of the Addison Library. Following defendant's plea of guilty, the State filed a petition to revoke his probation, alleging that he violated the conditions of probation by driving while his license was suspended. The stop of defendant for the traffic infraction arose from an investigation in July 2006 involving a mother who used her 16-year-old daughter's MySpace account to arrange a meeting with a 28-year-old male. Defendant admitted that he had violated his probation by driving while his license was suspended, and the trial court informed defendant that his new sentence could range from probation to seven years' imprisonment.

At the resentencing hearing, the State called Addison detective Brian Gross, the lead detective investigating defendant's April 2004 offense, to testify about that case. Gross testified that, in three separate e-mails to the 13-year-old victim, defendant signed "always, Tommy." Gross also testified that defendant admitted he referred to himself as "Tommy" in conversations that he had with the victim.

Gross testified that defendant's computer profile indicated that defendant was also "Tommy D" in his communications with the victim; defendant admitted to Gross that that was his profile and the name he used. Gross further testified that he learned from the victim that defendant referred to his ethnicity as Puerto Rican, Filipino, and Indian.

Next, Mary R. testified that in July 2006 she intercepted MySpace communications between her 16-year-old daughter, L.R., and a user named "Tommy." She testified that "Tommy's" profile listed his age as 28 but did not have a profile picture other than a generic silhouette. Upon seeing these communications, Mary R. warned her daughter not to communicate with "Tommy" anymore. Mary R. testified that she personally contacted "Tommy" by e-mail and told him that her daughter was 16 and that he should leave her daughter alone or Mary R. would call the police. On cross-examination, however, Mary R. admitted that she did not have a copy of the e-mail. On direct examination, Mary R. further testified that, on July 24, she was searching through the communications on the computer when "Tommy" sent another message intended for her daughter. She testified that "Tommy" wrote "hi; I heard from your mom." Mary R. deliberately tried to maintain the conversation, intending to set up a meeting with him. Recalling a previous conversation in which "Tommy" had said that Absolut vodka was available, Mary R. asked if it still was available and "Tommy" affirmed that it was. Eventually, "Tommy" agreed to meet at 11:30 a.m. at a park near Birchbark and Morton Roads in Carol Stream. He did not describe his car, but described himself as a 28-year-old Puerto Rican, Filipino. Mary R. subsequently called the Carol Stream police.

Carol Stream sergeant Daniel Hoffman testified that he was contacted by Mary R. about the conversation she had with "Tommy" on July 24. Hoffman testified that Mary R. informed him about the meeting she had set up with "Tommy." After setting up surveillance near the park, Hoffman observed an Hispanic or Asian male slowly drive past him in a gold Nissan. Hoffman stopped the gold Nissan for failing to signal 100 feet before making a turn; defendant was the driver. Hoffman testified that defendant's hands were shaking as he handed over his license and that he appeared nervous. When Hoffman asked defendant where he was going, defendant said that he was looking for his wife's friend's home. Defendant was subsequently arrested for driving while his license was suspended. Upon an inventory search of the car, police recovered from the trunk a bottle of Absolut vodka and two drinking glasses. From defendant himself, police recovered a sealed condom package.

Detective Matthew Harrison testified that he interviewed defendant at the Carol Stream police department. During this interview, defendant denied that he was "Tommy" on MySpace. Harrison testified that defendant said he was looking for a "help wanted" sign that his cousin told him was near County Farm and Lies Roads. Defendant denied knowledge of the Absolut vodka in the trunk of the car. Harrison testified that he found on defendant a jump drive and a camera flash drive. Defendant gave Harrison consent to search their contents.

Harrison next testified about his investigation related to the contents of the drives. Harrison testified that, after looking at defendant's MySpace friends, he observed communications between "Tommy" and another user named "Betsy." Harrison contacted "Betsy" through his own MySpace account and, upon request, "Betsy" forwarded Harrison an e-mail and a photo attachment she received from "Tommy." The State presented printouts of the e-mail and the attached photograph. The printouts indicated that the e-mail was sent by Roy Varghese from the address "Rvarghese78@hotmail.com." The e-mail also listed "Sxysweetthang87@sbcglobal.net" as the addressee. Harrison testified that the photo sent to "Sxysweetthang87" was identical to a photo recovered from defendant's drive. On cross-examination, Harrison admitted that Rvarghese78@hotmail.com was registered to Joseph Stevenson, with a listed birth date of November 3, 1983. Furthermore, he admitted that there was no information that the Rvarghese78 e-mail account was accessed on July 19, July 21, or July 24.

Harrison also testified regarding grand jury subpoenas related to the "Tommy" MySpace account. The subpoenaed records reflected that the account was registered to Tommy Stevens and listed the e-mail address as "Rvarghese78@hotmail.com." Additionally, Harrison testified that an Internet Protocol activity report indicated that a user logged onto the "Tommy" account on the morning of July 24 from a public computer at the College of Du Page. On cross-examination, Harrison admitted that an unlimited amount of Internet users could have assumed the MySpace identity of "Tommy." Harrison also agreed that, with respect to user names, a user name of "Tommy" was not the same as a user name of "TommyD411."

Through Harrison, the State presented several documents it received from Mary R. Harrison testified to portions of certain e-mails, such as where "Tommy" stated, "hey sweetie; wha's up? Cute pics. My name is Tommy. I'm 28 years old." Harrison further indicated where "Tommy" described himself as being Indian, Filipino, and Puerto Rican. An e-mail was signed "always, Tommy." Additionally, Har-

rison testified that one of the e-mails sent by L.R. indicated that she told "Tommy" she was only 16 years old. At one point, she asked "Tommy" to send a picture, and "Tommy" replied that he would send a picture of him and his nephew. The e-mails also discussed alcohol and partying, with "Tommy" saying that a bottle of Absolut vodka was available.

Defendant objected, arguing that the different variations of the "Tommy" user names had not been tied to defendant. Defendant's objections related to the relevance, reliability, hearsay, and lack of foundation of the evidence. The State responded that Mary R. testified regarding the e-mails she observed and reviewed; that Mary R. sent the e-mails to Harrison; and that Harrison testified regarding his receipt of the e-mails. The State further argued that Harrison should be allowed to present excerpts of the e-mails that appear to be relevant and reliable to establish whether defendant violated his probation. The State highlighted the similarities between the April 2004 offense and the July 2006 communications. The State pointed to the similar use of the name "Tommy"; the similar signatory, "always, Tommy"; the similar description of the user's ethnicity; the subpoena that was returned showing an e-mail address of Rvarghese78@hotmail.com, defendant's initials, and defendant's birth year; that the e-mail account was used to send a photograph of defendant; that defendant's photograph was sent through a MySpace account using the hotmail e-mail address; and that the same photograph was also located in defendant's flash drive and jump drive. The State further argued that, when Mary R. scheduled a meeting with "this Tommy person," it was defendant who presented himself. The State argued that, when considered in its entirety, the evidence was sufficiently relevant and reliable for admission.

Defendant countered that no evidence linked "TommyD411" to "Tommy," and no evidence linked the College of Du Page computer to defendant. The trial court ruled that the evidence presented by the State, although circumstantial, was relevant and reliable and it admitted the evidence.

Laura Skach, defendant's probation officer, testified that she was assigned to monitor defendant's probation. She testified that she reviewed with defendant the conditions of sex offender probation. She affirmed that one of the conditions was that he not contact minors without her permission. She denied giving him permission to contact a 16-year-old female by computer.

In mitigation, John Alexander, defendant's cousin, testified that he had known defendant for eight years and that defendant helped him care for his family while he was going through his medical

residency program. Alexander did not express any concern about allowing defendant to have contact with him or his family. George Varghese, defendant's father, testified next in mitigation about defendant's difficulty maintaining a job since his 2004 offense. He testified that defendant moved in with him and his wife after defendant was unable to afford rent and was evicted. He also testified that defendant's infant son had a tumor removed from his stomach in June 2006.

Defendant testified on his own behalf. He apologized to the court and asked for leniency so that he could be there for his son. He pointed to his recent raise and promotion at his new job. Defendant emphasized that he was the sole financial provider for his wife and son.

The trial court issued its ruling. The trial court stated that it "had a chance to consider the evidence that was presented on each side *** [and] had a chance to consider the statutory factors in aggravation, statutory factors in mitigation and the Illinois [C]onstitution." The court noted that it listened to the evidence in mitigation, defendant's own statement, the presentence report, and the arguments that were made. The court reiterated that the resentencing was taking place because "defendant was put on two years of sex offender probation pursuant to a plea agreement where he agreed to do certain things." The court stated that it was undisputed that defendant violated his probation by driving without a license. The court continued:

> "THE COURT: *** [F]rom all the evidence that's been presented *** there can be no doubt but that [defendant] while on sex offender probation attempted to meet with a 16 year old girl for the purpose of having sex. There is no doubt in my mind ***. There is no doubt but that the defendant knew that this was a 16 year old girl that he was going to meet. *** I don't think there was any doubt but that *** the defendant knew this was a 16 year old girl."

The court expressed that, based on this conduct, it was "unlikely that [defendant] has any future rehabilitative potential at this point in time." The court concluded:

> "THE COURT: The bottom line is, we're here because of the conduct of the defendant, not because of what I did, not because of what the State did, not because of what the police did, not because of what [Mary R.] did, although I guess I'm grateful she did what she did, but we're here considering the conduct of the defendant and the conduct of the defendant indicates that the sex offender probation has had effectively no impact on him and that he was attempting to do again the same things that brought him back before me.
>
> This conduct is intolerable. This conduct is dangerous, and I'm going to order that he serve 7 years in the Illinois Department of Corrections, two years mandatory supervised release."

Following the trial court's denial of his motion to reconsider his sentence, defendant timely appeals.

■ Defendant first contends that the trial court improperly relied on double hearsay that lacked an adequate foundation and failed to connect defendant to the uncharged conduct. Defendant argues that his sentence should be reduced or, alternatively, that he should receive a new sentencing hearing. We disagree with defendant's contention.

It is well established that the ordinary rules of evidence are relaxed during sentencing hearings. *People v. Bouyer*, 329 Ill. App. 3d 156, 165 (2002). Evidence may be admitted so long as it is both relevant and reliable. *People v. Harris*, 375 Ill. App. 3d 398, 408 (2007). The source and type of admissible information is virtually without limits. *People v. Rose*, 384 Ill. App. 3d 937, 940-41 (2008). A court " 'may search anywhere, within reasonable bounds, for other facts which tend to aggravate or mitigate the offense.' " *People v. La Pointe*, 88 Ill. 2d 482, 495 (1981), quoting *People v. McWilliams*, 348 Ill. 333, 336 (1932). Specifically, a court may inquire into a defendant's "general moral character, habits, social environment, abnormal tendencies, age, natural inclination or aversion to commit crime, and stimuli motivating his conduct, in addition to his family life, occupation, and criminal record." *People v. Reed*, 376 Ill. App. 3d 121, 128 (2007). It may also consider a defendant's "criminal conduct not resulting in prosecution or conviction." *Harris*, 375 Ill. App. 3d at 409.

Defendant advances separate claims about the evidence admitted at his sentencing hearing. Without directing this court to consider any specific testimony, defendant generally argues that Mary R.'s testimony regarding L.R.'s communications with "Tommy" on MySpace should not have been admitted, because it was hearsay. Defendant also argues that Harrison's testimony regarding copies of e-mails between L.R. and "Tommy," which he received from Mary R., was double hearsay. Defendant maintains that the evidence was unreliable and that he was entitled to challenge it through cross-examination. Defendant's arguments are not persuasive.

Merely because testimony contains hearsay does not render it *per se* inadmissible at a sentencing hearing. *Harris*, 375 Ill. App. 3d at 409. If the evidence is "double hearsay[, it] should be corroborated, at least in part, by other evidence." *People v. Spears*, 221 Ill. App. 3d 430, 437 (1991). A hearsay objection at sentencing goes to the weight of the evidence rather than its admissibility. *Rose*, 384 Ill. App. 3d at 946. Determining the reliability of hearsay rests within the sound discretion of the trial court. *People v. Spicer*, 379 Ill. App. 3d 441, 467 (2007).

In this case, the trial court was well within its discretion to consider the testimony of Harrison and Mary R. Defendant relies on

*People v. Blanck*, 263 Ill. App. 3d 224 (1994), for the proposition that at sentencing mere allegations of uncharged conduct must be presented by firsthand testimony. *Blanck*, 263 Ill. App. 3d at 235-36, citing *People v. Stoutenborough*, 64 Ill. App. 3d 489, 493-94 (1978). The proposition does not apply to the instant case. In *Blanck*, the reviewing court barred the admission of hearsay at sentencing because it was offered solely through statements derived from the presentence report. *Blanck*, 263 Ill. App. 3d at 235-36. By rendering the evidence inadmissible, the reviewing court sought both to preserve a defendant's right to cross-examination and to avoid potential inaccuracies contained in the presentence report. *Blanck*, 263 Ill. App. 3d at 235-36. Here, by contrast, any potential hearsay was not derived from defendant's presentence report but rather from the testimony of live witnesses. The record clearly reflects that defendant had the opportunity to cross-examine both Mary R. and Harrison. In light of this, that Harrison's testimony was allegedly double hearsay does not render it unreliable. See *Spears*, 221 Ill. App. 3d at 437. Mary R.'s statement that she personally contacted "Tommy" was corroborated by "Tommy's" e-mail of July 24, 2006, where he wrote "so why did ur mom send me an e-mail?" The trial court, therefore, did not abuse its discretion by considering the testimony of Harrison and Mary R.

■ Defendant next argues that the photo sent to "Betsy," which actually depicted defendant with his son, was hearsay, unreliable, and irrelevant and failed to connect him to the uncharged conduct. He asserts that it was hearsay because it came from "Betsy." Defendant further asserts that the photo failed to connect him to the uncharged conduct because, although it came from the e-mail address Rvarghese78@hotmail.com, that address was registered to Joseph Stevenson, who listed a different birth date and zip code from defendant. We are not persuaded by this argument.

Again, that the evidence is hearsay does not render it inadmissible at sentencing. *Harris*, 375 Ill. App. 3d at 409. Here, the evidence was justifiably deemed relevant and reliable in connecting defendant to the conduct at issue. Upon defendant's arrest, the same photo of defendant sent to "Betsy" was found on defendant himself, upon the search of his jump drive and camera flash drive. Harrison's investigation, moreover, failed to reveal any Joseph Stevenson with the same birth date and zip code listed for the Rvarghese78@hotmail.com address. While circumstantial, these factors reliably connected defendant to the communications between "Tommy" and Mary R. and were relevant to whether defendant engaged in the uncharged conduct. The trial court was within its discretion to consider the photo of defendant sent to "Betsy."

■ Defendant next argues that the State did not link him to the three noninterchangeable Internet user names, "Tommy," "Tommy D," and "TommyD411." He argues that, because the evidence lacked an adequate foundation, it should not have been admitted. We agree with the State that this argument fails to recognize defendant's previous admission to Gross that defendant used two of the names, "Tommy" and "Tommy D," when he communicated with the victim of the original offense. Simply because the State never provided any evidence linking defendant to the public computers at the College of Du Page does not defeat that he admitted representing himself as "Tommy" and "Tommy D." No such linking was, therefore, required. With respect to the name "Tommy D411," we note that there was no claim by the State that all of the "Tommy" user names were the same. Also, police officers are generally permitted to testify as to their investigatory procedures. See *People v. Hooker*, 253 Ill. App. 3d 1075, 1089-90 (1993). Here, the trial court recognized the circumstantial nature of the evidence the State presented but nonetheless found it sufficiently relevant and reliable to warrant its admission. See generally *People v. Bowman*, 95 Ill. App. 3d 1137, 1141 (1981) (stating that the sufficiency of a foundation for the admission of secondary evidence of contents of a writing depends upon the circumstances of each case and is, to some degree, within the discretion of the trial court). We find no abuse of the trial court's discretion to receive or consider the evidence. See *Bouyer*, 329 Ill. App. 3d at 165.

■ Defendant lastly argues that the State's evidence failed to connect him to the uncharged offense. He acknowledges that being stopped four blocks from the location of the meeting set up by Mary R., with a bottle of Absolut vodka in his car, might connect him to the uncharged conduct. Defendant insists, however, that that fact alone is insufficient to prove that he was "Tommy," the person with whom Mary R. set up the meeting. We are unpersuaded by this argument. Combined with all the other evidence linking defendant to "Tommy," defendant's presence in the vicinity and his possession of a bottle of Absolut vodka as discussed in the e-mail were sufficient. The trial court was within its discretion to admit the evidence as both relevant and reliable and, therefore, did not abuse its discretion in admitting the State's evidence against defendant.

■ Defendant next contends that the trial court abused its discretion when it sentenced him to the maximum seven-year term. Rather than sentencing him for the offense to which he pleaded guilty in 2005, defendant argues, the trial court punished him for uncharged conduct that allegedly occurred while he was on probation. We agree.

A reviewing court may not overturn the sentencing decision of a trial court absent an abuse of the trial court's discretion. *Bouyer*, 329 Ill. App. 3d at 161. When sentencing, a trial court may properly consider a defendant's conduct while on probation as evidence of rehabilitative potential. *Bouyer*, 329 Ill. App. 3d at 161. In doing so, it may even give the defendant a more severe sentence than it originally imposed. *People. v. Palmer*, 352 Ill. App. 3d 891, 895 (2004). But a trial court may never punish a defendant for the conduct that gave rise to the probation violation. *People v. Risley*, 359 Ill. App. 3d 918, 920 (2005). If the conduct while on probation constitutes a separate offense, the defendant should be tried and found guilty, and the sentence should conform to "orderly criminal processes." *People v. Koppen*, 29 Ill. App. 3d 29, 32 (1975). In general, " 'a sentence within the statutory range for the original offense will not be set aside on review *unless* the reviewing court is strongly persuaded that the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of the revocation, and *not* for the original offense.' " (Emphases in original.) *People v. Vilces*, 186 Ill. App. 3d 983, 986 (1989), quoting *People v. Young*, 138 Ill. App. 3d 130, 142 (1985); see also *Risley*, 359 Ill. App. 3d at 921.

In determining whether a trial court improperly punished a defendant for conduct while on probation, reviewing courts have looked at several factors. They consider foremost whether the sentence was within the proper statutory range. See *Vilces*, 186 Ill. App. 3d at 986-87. But even when the sentence was within the statutory range, some reviewing courts have further looked at whether the proportionality of the offense to the sentence was consistent with that of other defendants with similar criminal backgrounds. See *Koppen*, 29 Ill. App. 3d at 33. Importantly, reviewing courts have concluded that "the record must clearly show that the court considered the original offense." *People v. Hess*, 241 Ill. App. 3d 276, 284 (1993). To make that determination, reviewing courts may consider the remarks of the trial court during sentencing. See *Young*, 138 Ill. App. 3d at 140.

Based upon our review, we determine that the record clearly reflects that the trial court punished defendant for his conduct while on probation rather than strictly for his original offense. Applying the aforementioned principles here, we note that defendant's sentence was within the three- to seven-year statutory range. See 730 ILCS 5/5—8—1(a)(5) (West 2004). On the record, the trial court stated that it considered the presentence report and the factors in aggravation and mitigation. The trial court specifically made reference to the testimony of defendant's cousin and father and mentioned the circumstances related to defendant's child. Turning to the evidence in

aggravation, the trial court concluded, despite the contested testimony, that defendant attempted to meet with a 16-year-old girl while on sex offender probation. Describing that evidence in detail, the trial court concluded that defendant lacked any potential for rehabilitation. We recognize that the trial court was authorized to consider defendant's conduct while he was on probation as evidence of his capacity for rehabilitation. In its brief, the State contends that the trial court considered defendant's conduct while on probation solely as evidence of his rehabilitative potential. In light of the record, the State's argument is unconvincing.

As noted, the record must clearly demonstrate that the trial court considered defendant's original offense when fashioning his sentence. *People v. Gaurige*, 168 Ill. App. 3d 855, 869 (1988) ("the record must clearly show that the court considered the original offense when imposing the sentence"); *People v. Clark*, 97 Ill. App. 3d 953, 956 (1981) ("the record should positively demonstrate the court considered the original offense as the crime upon which [the] sentence is imposed"). Here, the remarks of the trial court in their totality clearly indicate that it never expressly considered defendant's original offense when fashioning his sentence. Rather, the trial court's concluding comments, by focusing on defendant's conduct while on probation, demonstrate that it improperly commingled uncharged conduct with his original offense. Immediately prior to imposing sentence, the trial court chastised defendant for the reprehensible nature of his conduct while on probation. It stated in summation: "This conduct is intolerable. This conduct is dangerous." Read in context, the phrase "this conduct" clearly referred to defendant's conduct while on probation. That the trial court's final sentencing determination immediately followed this statement and a lengthy discussion about the certainty of the uncharged conduct strongly indicates that defendant was sentenced for such particular "dangerous" and "intolerable" uncharged conduct. If this conduct constitutes another offense, defendant should be tried, convicted, and sentenced "under orderly criminal processes." *Koppen*, 29 Ill. App. 3d at 32. With only a passing reference to defendant's original offense, it is apparent that the trial court improperly commingled defendant's conduct while on probation with his original offense.

We are convinced that the trial court punished defendant for his conduct while on probation, and, therefore, we hold that the trial court abused its discretion in sentencing defendant. Accordingly, we vacate defendant's sentence and remand the case to the trial court for resentencing purposes only.

Because we are vacating defendant's sentence, the remaining issues pertaining to defendant's sentencing order are of no effect. But because they may arise on remand at resentencing, we elect to address them here.

Defendant contends, and the State agrees, that the Drivers Education Fund penalty was not statutorily authorized. See 625 ILCS 5/16—104a (West 2004). Accordingly, the Drivers Education Fund penalty should not be assessed against defendant on remand.

Defendant also contends that he should receive monetary credit toward his fines, based on the time that he was incarcerated prior to sentencing. We agree. Section 110—14(a) of the Code of Criminal Procedure of 1963 (the Code) provides:

> "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110—14(a) (West 2004).

Effective on January 1, 2005, the Code was amended to deny credit to those incarcerated for committing sexual offenses as defined under section 5—9—1.7 of the Unified Code of Corrections. See 725 ILCS 5/110—14(b) (West 2006). The State argues that the plain meaning of the statute precludes defendant from receiving credit for his time spent in custody, because he was jailed for aggravated criminal sexual abuse, an excluded offense. Defendant counters by noting that the amendment was enacted after the commission of the offense and he is thus entitled to the application of the law prior to the amendment. Defendant's argument is correct.

Defendant is entitled to be sentenced under the law that was in effect at the time of his offense. In *People v. Prince*, 371 Ill. App. 3d 878 (2007), for instance, a defendant sought credit for time spent in custody where the amendment to section 110—14 of the Code was enacted after the offense was committed. The reviewing court agreed, reasoning that sentencing the defendant under the statutory amendment would violate the prohibition on *ex post facto* laws. *Prince*, 371 Ill. App. 3d at 881. Similarly, in *People v. Delgado*, 376 Ill. App. 3d 307 (2007), the reviewing court held that, because the offense was committed prior to the amendment, the defendant was entitled to elect whether he wanted to be sentenced under the law in effect at the time of the offense or the one in effect at the time of sentencing. *Delgado*, 376 Ill. App. 3d at 321.

In this case, the law at the time of the offense to which defendant pleaded guilty did not exclude granting credit to those incarcerated for

aggravated criminal sexual abuse. The offense here occurred on or about April 19, 2004, prior to the enactment of the exclusion. Under the law in effect prior to January 1, 2005, because defendant was incarcerated for the offense, he is entitled to credit under the statute, with no exclusion for his charged offense. Accordingly, we order that at resentencing defendant be credited the proper amount for his time spent in custody.

Last, defendant contends, and the State agrees, that he should be assessed no more than $4 under the Violent Crime Victims Assistance Act (725 ILCS 240/2 *et seq.* (West 2004)) because a $4 criminal/traffic surcharge had already been imposed. See *People v. Jamison*, 229 Ill. 2d 184 (2008). In accordance with *Jamison*, at resentencing, if applicable, defendant's penalty under that Act should be limited to $4.

In sum, we vacate defendant's sentence and remand to the trial court for resentencing. At resentencing, defendant will be entitled to the proper credit for time spent in custody; any penalty under the Violent Crime Victims Assistance Act will be limited to $4; and the Drivers Education Fund penalty will not be applied against defendant.

For the foregoing reasons, we vacate the judgment of the circuit court of Du Page County and remand for further proceedings consistent with this opinion.

Vacated and remanded.

ZENOFF, P.J., concurs.

JUSTICE BURKE, dissenting:

Based upon this record, I am not *strongly persuaded* that the trial court *in fact* imposed the sentence as a penalty for defendant's conduct while on probation. See *People v. Young*, 138 Ill. App. 3d 130, 142 (1985). The majority correctly states the rule that a reviewing court may consider the remarks of the trial court to determine whether the record shows that the trial court considered the original offense, as required, in resentencing the defendant. But the majority fails to elaborate that *Young* also requires that those remarks "must be taken in context, and read in their entirety, including arguments of counsel." *Young*, 138 Ill. App. 3d at 142.

In this case the prosecutor began his argument by stating:

"Judge, let us not forget we are here to re-sentence the defendant for his original offense and that the original offense is this defendant who prayed [*sic*] upon a 13 year old girl through the computer and his predatory actions in communicating with that girl and ultimately meeting up with that young girl 13 years of age

and engaging in oral sex, having that young girl perform oral sex on [him]. That is what happened in the original case."

The trial court first commented that it considered the arguments of counsel, the statutory factors in aggravation and mitigation, and the presentence report, which referenced the original offense. In view of these comments, the record shows that the trial court considered the original offense in imposing the sentence.

During its remarks, the trial court also made specific findings of fact based upon the evidence presented in aggravation. The trial court found that defendant, while on sex offender probation, made computer contact with a person he believed to be a 16-year-old girl and attempted to meet her for the purpose of having sex. The trial court was free to consider this conduct as evidence concerning rehabilitative potential. *People v. Bouyer*, 329 Ill. App. 3d 156, 161 (2002). The court stated:

"I don't think there was any doubt but that this person and the defendant knew this was a 16 year old girl.

The—having said that, I—need to look at how likely is he to be rehabilitated?

The evidence is he's been on sex offender probation for a little more than a year and in that time he has gotten—made attempts to meet with a 16 year old girl and not only make the attempt but show up.

He certainly thought it was going to be a 16 year[ ] old girl in light of the e-mails that were sent.

I think it is unlikely that he has any future rehabilitative potential at this point in time, and I at this point believe that I have an obligation to look at what is best not just for him and his rehabilitative potential, which I did consider but also what's in the best interest for society.

I believe society needs to be protected from this type of conduct.

I would agree that there's going to be a hardship to the defendant and to his family by me sending him to the Department of Corrections. There is no doubt that is the case, and there's no doubt that I feel badly for his mother, father, cousin, wife and his baby.

The bottom line is, we're here because of the conduct of the defendant, not because of what I did, not because of what the State did, not because of what the police did, not because of what [Mary R.] did, although I guess I'm grateful she did what she did, but we're here considering the conduct of the defendant and the conduct of the defendant indicates that the sex offender probation has had effectively no impact on him and that he was attempting to do again the same things that brought him back before me.

This conduct is intolerable. This conduct is dangerous, and I'm going to order that he serve 7 years in the Illinois Department of Corrections ***."

The task of weighing factors in aggravation and mitigation is the function of the trial court. *People v. Torres*, 269 Ill. App. 3d 339, 350 (1995). When the trial court's comments are read in their entirety, they focus on defendant's rehabilitative potential in light of the fact that his probation for the original sex offense had no effect on his conduct. It is not surprising that the trial court emphasized defendant's lack of rehabilitative potential, given that defendant was attempting to commit the same offense of which he was originally convicted while on probation for that original offense.

In *Young*, the court cautioned that, in view of the deference accorded sentencing determinations, such determinations as follow upon the revocation of probation should not be more easily overturned than sentencing determinations generally. *Young*, 138 Ill. App. 3d at 142. It stated:

"An analysis which suggests that the trial court (1) cannot consider the conduct which resulted in the probation being revoked, or (2) cannot consider such conduct past a certain point in the sentencing hearing, or (3) that thereafter a sentencing judge must specifically state that he nevertheless is sentencing the defendant solely on the basis of the original offense—and has considered the conduct which was the basis for the revocation only to the extent of the defendant's rehabilitative potential—is not only without merit but reflects a head-in-the-sand attitude. When the trial court originally imposed the sentence of probation, it made that determination on the basis of all of the records and reports available. Conduct which leads to revocation of probation has been regarded as a 'breach' of the court's trust, or as otherwise causing the court to lose confidence in the defendant's rehabilitative potential." *Young*, 138 Ill. App. 3d at 140.

In this case, the trial court's comments evince its loss of confidence in defendant's rehabilitative potential and nothing more. Therefore, I respectfully dissent.