NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180210-U

NO. 4-18-0210

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 13, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| JOHN W. REED, | ) | No. 12CF197 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert K. Adrian, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Steigmann and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1 *Held:* Trial court did not err in sentencing defendant to six years in prison for unlawful participation in methamphetamine production after defendant's probation was revoked.

¶ 2 In August 2017, the trial court sentenced defendant, John W. Reed, to six years in prison for unlawful participation in methamphetamine production after defendant admitted to part of the State's petition to revoke his probation. Defendant appeals, arguing his sentence should be vacated and the case remanded for a new sentencing hearing because the trial court improperly sentenced him for conduct that occurred while he was on probation rather than the underlying offense of unlawful participation in methamphetamine production. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4 On April 17, 2012, the State charged defendant by information with one count of aggravated unlawful participation in methamphetamine production (less than 15 grams). On

November 7, 2012, the State agreed to reduce the charge to unlawful participation in methamphetamine production (less than 15 grams) (720 ILCS 646/15(a)(1)(B) (West 2012)). Defendant agreed to plead guilty to this charge. In February 2013, Judge Mays refused to agree to the terms of the plea agreement, under which defendant would have been given probation, and recused himself from the case.

¶ 5    On May 3, 2013, defendant failed to appear at a status hearing before Judge Walden. The trial court issued an arrest warrant for defendant. Days later, police officers went to defendant's home to execute the warrant. While approaching the home, one officer saw defendant standing outside with a wooden box. Coffee filters found in the box contained a white powder residue, which tested positive for methamphetamine. The State charged defendant with unlawful possession of methamphetamine.

¶ 6    On November 1, 2013, defendant's attorney indicated defendant would plead guilty to one count of participation in the manufacture of methamphetamine in this case and one count of unlawful possession of methamphetamine in Adams County case No. 13-CF-294 in exchange for a sentencing cap of eight years. The State agreed to dismiss a deceptive fraud charge. On November 6, 2013, defendant entered his guilty pleas.

¶ 7    At the sentencing hearing on February 21, 2014, before Judge Walden, defendant testified he had not used drugs since May 7, 2013, and was attending Alcoholics Anonymous (AA) and Narcotics Anonymous (NA) meetings daily, in addition to weekly and biweekly meetings at other programs. He also testified all four of his children had been taken from him and his wife and the termination of his parental rights was imminent as to three of the children. Defendant told the court he had been making methamphetamine to sustain his own addiction. According to defendant, prior to his arrest in 2013, he had attended inpatient recovery programs

but had never been exposed to NA or AA. After becoming involved in NA and AA, he realized he would have to do something every day to treat his addiction and indicated that is what he intended to do. He replaced his social circle with people he had met in his recovery meetings.

¶ 8 The trial court sentenced defendant to concurrent terms of 4 years' probation for unlawfully participating in the manufacture of methamphetamine and 30 months' probation on the possession charge. As a condition of his probation, defendant was required to submit to drug testing and was prohibited from using drugs and alcohol.

¶ 9 On December 7, 2016, the State filed a petition to revoke defendant's probation. The petition noted defendant failed to report for drug testing on August 5, 8, 10, 12, 15, and 29, and September 2, 23, 26, and 28, 2016. Defendant also had positive drug tests on September 6, 9, and 21. A warrant was issued for defendant's arrest. Defendant turned himself in on December 12, 2016. His bond was reduced to $2000.

¶ 10 At a hearing on April 4, 2017, defense counsel and the State agreed an order entered on March 22, 2017, incorrectly indicated the State confessed a motion to dismiss in this case. Instead, the State confessed the motion to dismiss its petition to revoke defendant's probation in case No. 13-CF-294 because defendant had already completed his term of probation in that case. The trial court discharged defendant from probation in case No. 13-CF-294.

¶ 11 As for the petition to revoke defendant's probation in the instant case, at the April 4, 2017, hearing, defendant agreed to admit he did not report for urinalysis on August 5, 8, 10, 12, and 15, 2016, and September 2, 23, 26, and 28, 2016. The trial court explained to defendant he would be resentenced on the original offense, which was unlawful participation in methamphetamine production, and could be sentenced to the Department of Corrections for a period between 4 and 15 years, fined up to $250,000, with two years of mandatory supervised

release (MSR) if he was sentenced to a term of imprisonment.  The court advised defendant anything he did toward completing his probation or violating the terms of his probation could be taken into consideration at his sentencing hearing.

¶ 12    On August 14, 2017, the trial court held a sentencing hearing. Defendant's counsel asked for a continuance because the defense was waiting for treatment records from Quincy Medical Group where defense counsel stated defendant had been addressing his mental health issues.  The trial court denied defendant's request.  The State did not present any evidence at the hearing.  Defendant testified on his own behalf.  According to his testimony, he was diagnosed with bipolar disorder when he was 13.  He currently was seeing a psychotherapist and taking Seroquel.  When asked why he stopped showing up for his urine screens, defendant noted his children had been "returned to [him] illegally" and lived with him for about a year.  When the children were taken away again, defendant stated his mental health deteriorated.

¶ 13    Defendant denied using illegal drugs while he was on probation.  He testified some of his positive drug test results might have been caused by his prescription medication.  He also testified one of his positive drug tests might have been caused by a woman from his NA group who put something in his drink at her home as part of an attempt to make a sexual advance on him.

¶ 14    The State argued defendant had been given the opportunity to succeed. However, it was time for him "to pay the price for his inability to condone [*sic*] to the rules of probation." The State also noted the case involved a very serious charge and asked the court to sentence defendant to a term of imprisonment.  Defense counsel noted defendant's significant mental health issues and pointed out defendant's failure to show up for drug tests coincided with the loss of his children.  In addition, defense counsel argued defendant's recent struggles with his bipolar

- 4 -

disorder explained his absences from the drug tests and argued he should not be sentenced to prison. Counsel stated:

> "I don't think that [defendant] should go to prison. I can certainly understand the concern of the probation department. I don't know if this is a case where the court would consider felony conditional discharge, but given everything that we know about [defendant], I just don't see this as a DOC case."

Defense counsel asked the court for either probation or conditional discharge.

¶ 15 The trial court stated it had considered the fourth supplement to the presentence investigation report along with the attached prior reports, the factors in aggravation and mitigation, the arguments of counsel, and defendant's statement. The court also noted defendant had been given multiple chances, many of which the court found defendant did not deserve.

¶ 16 The court noted defendant had originally been charged with aggravated unlawful participation in methamphetamine production, a Class X felony, for which defendant had no chance of probation. The court stated it had read the reports related to the alleged Class X offense and found it was a good charge. However, whether to induce a plea or give defendant a break, the State allowed defendant to plead guilty to an amended charge of unlawful participation in methamphetamine production, a Class 1 felony with a chance for probation. The court noted the third supplement to the presentence investigation report indicated defendant was "out of compliance with every possible aspect of what one would consider possible probation terms." Further, defendant's history of compliance and cooperation with the probation department was poor. The probation department found defendant was not an appropriate candidate for probation. Regardless, defendant was sentenced to probation.

¶ 17 The trial court noted defendant had been given a chance to change his life.

However, the State filed the petition to revoke defendant's probation, and defendant admitted missing required urine tests multiple times. The trial court issued an arrest warrant for defendant but reduced the bond to $2000 after defendant turned himself in. Defendant was able to post $200 and was released, promising the court he would submit to urinalysis. Defendant had only submitted to 5 of the 50 required urinalysis tests he was directed to comply with since he was released on bond in April 2017. The last urinalysis screen he participated in was on August 2, 2017.

¶ 18        The trial court told defendant a person only gets "so many breaks in life, and you've used yours up." The court noted defendant should have gone to prison originally and the minimum term would have been four years. The court then sentenced defendant to 6 years in prison with credit for 153 days served. According to the court, defendant was given multiple chances and knew what would happen and where he would go if he did not comply with the terms of his probation.

¶ 19        On August 17, 2017, defendant filed a *pro se* motion to modify his sentence. Defendant noted he had obtained medical records showing he was actively involved in his recovery treatment when the State filed its petition to revoke his probation. He also indicated he had completed drug tests on August 1, 3, 7, 9, and 11, 2017. On August 23, 2017, defendant's public defender filed a motion to reconsider defendant's sentence. Counsel restated the claims from defendant's *pro se* petition. On August 31, 2017, defendant filed another *pro se* motion alleging his defense counsel had been ineffective.

¶ 20        In September 2017, the trial court allowed defendant's attorney to withdraw, and the trial court appointed a new attorney to represent defendant.

¶ 21        On February 23, 2018, the trial court held a hearing with regard to the motions to

reconsider defendant's sentence. Defendant's new attorney adopted the motion filed by defendant's prior counsel on August 23, 2017, and attempted to present additional records in an attempt to show defendant was more engaged with his treatment, including treatment at the Quincy Medical Group, than what the court believed when sentencing defendant. Although no one from Quincy Medical Group had been subpoenaed for the hearing, defense counsel sought to add records from the facility as an addendum to the presentence investigation report for the court to consider while reconsidering its sentencing decision. The State objected, arguing these records did not qualify as newly discovered evidence.

¶ 22        As to the Quincy Medical Group records, the trial court asked why the records were relevant to the petition to reconsider defendant's sentence. Defense counsel stated the records indicated defendant only tested positive because of prescribed medication. Defense counsel argued this was mitigating even though he acknowledged this was unrelated to defendant admitting he missed drug tests. The court indicated it would consider two pages of the medical records from the Quincy Medical Group and a letter from Quincy Catholic Charities.

¶ 23        Defense counsel asked the trial court to give defendant a chance at an extended term of probation. In the alternative, defense counsel asked the trial court for impact incarceration or the minimum four year sentence.

¶ 24        The trial court stated the "new" evidence presented by defendant would not have changed the court's mind with regard to defendant's sentence because it was not the main reason why he sentenced defendant to six years in prison. According to the court:

> "The Court basically heard all this evidence, gave the Defendant the benefit of the doubt. The Court would note that he didn't just test positive once, nor did he test positive only one time in relationship to when he was receiving the

drug tests as set out in Defendant's Exhibit No. C. He, in fact, tested positive ten different times. The first one that was in there from June 16th, and the last one to July 17th and—or I'm sorry, those were the ones that he missed. The positive tests then were on different occasions, but the ones that he missed is considered by the Court to be positive tests.

The fact is that the Defendant was on probation for a very long time and would go through periods of where he was doing well and then not well, and the Court considered all of that.

The Court considered in its sentence the length of time the Defendant had been on probation, considered the Defendant's cooperation while he was on probation and weighed all those factors, and, in fact, knew that the Defendant had been doing treatment, knew that he was getting medical treatment, knew all that stuff, and nothing that the Defendant has provided today changes the Court's opinion or would cause the Court to issue a different sentence than the six years that the Court sentenced the Defendant to originally.

So the Court, even in light of this evidence, will deny the Motion to Reconsider. The Court has considered all of those issues during the original sentence and there is nothing here where the Court would change its mind, and so the motion is denied."

¶ 25    This appeal followed.

¶ 26                                II. ANALYSIS

¶ 27     Defendant argues the trial court erred when it sentenced him to six years in prison based on the conduct which led to the revocation of his probation rather than the

underlying offense of unlawful participation in methamphetamine production. Defendant asks this court to vacate the sentence imposed on defendant after he admitted violating the terms of his probation and remand this case to the trial court for a new sentencing hearing.

¶ 28        The State argues defendant forfeited this issue because it was not included in a motion to reconsider his sentence. We agree defendant forfeited this issue.

¶ 29        "A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed with the circuit court clerk within 30 days following the imposition of sentence." 730 ILCS 5/5-4.5-50(d) (West 2016) (formerly 730 ILCS 5/5-8-1(c) (West 2006)). In *People v. Rathbone*, 345 Ill. App. 3d 305, 309, 802 N.E.2d 333, 337 (2003), this court held a defendant can forfeit a claim the trial court erred in sentencing him for his conduct on probation rather than for his original offense by failing to raise the claim in a post-sentencing motion. In this case, not only did defendant not raise this issue in a post-sentencing motion, he did not raise this issue at any other time with the trial court.

¶ 30        For this court to review this issue pursuant to the plain-error doctrine, defendant has the burden of establishing a clear or obvious error occurred and either (1) the evidence at the sentencing hearing was closely balanced or (2) the error was so egregious he was denied a fair sentencing hearing. *People v. Manskey*, 2016 IL App (4th) 140440, ¶ 80, 55 N.E.3d 776. In *Manskey*, this court stated "the error has to just about leap off the pages of the record" to constitute a clear or obvious error. *Manskey*, 2016 IL App (4th) 140440, ¶ 82. We agree with the State defendant has failed to establish a clear or obvious error occurred when the trial court sentenced defendant to six years in prison.

¶ 31        A court must sentence a defendant based on the underlying offense and not the conduct which led to the revocation of the defendant's probation. *People v. Gaurige*, 168 Ill.

App. 3d 855, 868-69, 522 N.E.2d 1306, 1314 (1988). "[A] trial court may never punish a defendant for the conduct that gave rise to the probation violation." *People v. Varghese*, 391 Ill. App. 3d 866, 876, 909 N.E.2d 939, 948 (2009). However, a trial court may consider a defendant's conduct during the period of probation to assess his or her rehabilitative potential. *People v. Witte*, 317 Ill. App. 3d 959, 963, 740 N.E.2d 834, 837 (2000). That being said, "[t]he new sentence *** cannot punish the defendant for anything other than the original underlying offense." *Witte*, 317 Ill. App. 3d at 963, 740 N.E.2d at 838.

¶ 32     Based on the facts in this case, defendant cannot establish the trial court erred in discussing defendant's conduct while on probation. Defendant asked the court not to send him to prison. Instead, he asked for either probation or conditional discharge. As a result, the trial court clearly was justified in considering defendant's conduct while on probation to determine whether defendant had the rehabilitative potential to succeed if given another chance at probation. It appears this is likely what the trial court was doing while discussing defendant's failures while on probation.

¶ 33     Before imposing defendant's sentence after his probation was revoked, the trial court in this case stated it had considered the presentence investigation reports prepared in this case, the aggravating and mitigating factors, the arguments made by counsel, and defendant's statement. Defendant cannot establish the length of his prison sentence was not based on the underlying offense in this case. Defendant does not even attempt to argue the six-year prison sentence he received was excessive.

¶ 34                                    III. CONCLUSION

¶ 35     For the reasons stated, we affirm the trial court's judgment in this case.

¶ 36     Affirmed.