2021 IL App (2d) 200571-U
No. 2-20-0571
Order filed August 12, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-1077 |
| JULIUS LAMONT MOSSETTE, JR.[1], | ) ) ) | Honorable Debra D. Schafer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices McLaren and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The record showed that the sentence imposed after revocation of probation was punishment for the original offense and not for defendant's conduct while on probation. The trial court did comment on defendant's pending charge of domestic battery involving his son, but given the totality of the court's remarks at resentencing, the court considered only how that charge reflected on defendant's rehabilitative potential.

_____

[1] The caption is based on the indictment. At several hearings, defendant clarified that his name is "Julius Lamont Mossette, Sr."

¶ 2    Defendant, Julius Lamont Mossette Jr., appeals a judgment revoking his probation for failure to register as a sex offender (failure to register) (730 ILCS 150/3 (West 2018)) and resentencing him to five years in prison. Defendant contends that the trial court improperly sentenced him for an alleged offense he committed on probation instead of for the underlying offense. We hold that the court did not commingle the offenses but properly considered the intervening offense solely as evidence of defendant's limited rehabilitative potential. Thus, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    On October 10, 2018, defendant was charged with failure to register. On November 1, 2018, he entered a fully negotiated plea of guilty and was sentenced to 30 months' probation. The factual basis was as follows. In April 2018, defendant was arrested on an unrelated charge. After being released from custody on April 25, 2018, he had three days in which to register with the police department but failed to do so. On April 30, 2018, defendant called the department and said that he had entered a hospital because of mental health problems. After leaving the hospital, he failed to register. Defendant had previously served a prison sentence for failure to register. However, the State agreed to recommend probation in light of the extenuating circumstances. The court accepted the plea and sentenced defendant accordingly.

¶ 5    On January 15, 2019, the State petitioned to vacate defendant's probation, alleging in part that, on November 28, 2018, he had tested positive for alcohol consumption. On February 26, 2019, defendant admitted the allegation and was resentenced to an agreed term of 26 months' probation.

¶ 6    On September 13, 2019, the State again petitioned to vacate defendant's probation, alleging that he had failed three times to report to the probation department; that he had twice tested positive

for illicit drugs; and that he had once failed to provide a urine sample for drug and alcohol testing. On March 23, 2020, defendant admitted to one allegation of failing to report to the probation department. The court continued the matter for resentencing.

¶ 7    A presentencing investigation report (PSIR) noted the following. Defendant was currently charged with aggravated domestic battery and aggravated battery (case No. 19-CF-1866). Defendant's history included aggravated battery and criminal sexual assault, both committed as a juvenile in 1992. In each case, he was sentenced to 18 months' probation, which terminated unsatisfactorily. In 1996, as an adult, defendant was convicted of possession of cannabis; he received three months' probation, which was terminated satisfactorily. In 1998, defendant was convicted of aggravated criminal sexual assault, a Class X felony, and unlawful restraint, a Class 4 felony, both committed in 1996. He was sentenced to 10 years in prison. Defendant also committed failure to report a change of address and driving without a valid license, both in 2004; forgery in 2005; aggravated battery in 2006; possession of a controlled substance in 2007; criminal damage to property in 2010; failure to register in 2011; driving under the influence of alcohol in 2012; and aggravated assault of a peace officer in 2015.

¶ 8    On June 25, 2020, the trial court held a resentencing hearing. The sole witness, Rockford police officer Abel Castaneda, testified as follows. On June 28, 2019, he was dispatched to a street in Rockford. Jarvair Jones, defendant's son, had crashed his moped and was lying next to it. Castaneda called an ambulance and asked Jones what had happened. Jones said that defendant had stabbed him. He had slash marks on his arm and hand. At the hospital, Jones told Castaneda that, while driving home, he saw defendant and learned that he had been using Jones's home address as his own. Jones became upset because defendant was a sex offender. He confronted defendant about it. Defendant became angry, started throwing punches at Jones, then left and

returned with a knife. He stabbed Jones three times. Jones sped away on his moped and crashed into a curb. Jones said that he and defendant had fought numerous times and that defendant had stabbed him multiple times. He was afraid that defendant would attack him again.

¶ 9    Castaneda testified that Jones's account initially changed several times during the interview, but he eventually gave a consistent story. Castaneda took photographs of the injuries that Jones attributed to defendant. He also wrote a statement that Jones signed. The statement was consistent with what Jones said to Castaneda and added that Jones wanted to press charges. These charges were brought in case No. 19-CF-1866.

¶ 10    In argument, the State emphasized defendant's lengthy criminal record and repeated problems in complying with probation. He had failed to control his substance abuse. Further, several of his offenses were violent. Finally, defendant's previous failures to register as a sex offender, and his use of his son's address as his own, indicated that another term of probation would mean continued noncompliance with its conditions. The State urged a seven-year sentence, the statutory maximum. See *id.* § 10(a) (second or subsequent failure to register is Class 2 felony); 730 ILCS 5/5-4.5-35(a) (West 2018) (Class 2 felony sentencing range is three to seven years).

¶ 11    Defendant requested probation, arguing as follows. Incarceration would not help him address his substance abuse and psychological instability. Evidence of his confrontation with his son was hearsay and unreliable. He had cooperated with probation many times and recognized the need to address his problems. The failure to register neither caused nor threatened serious physical harm to anyone, and his character and attitude showed that he was unlikely to commit another crime.

¶ 12    In allocution, defendant noted that, originally, he had failed to register because he had been in the hospital for mental health problems.  Probation would enable him to learn how to deal with his psychological difficulties.  Also, he could stay in touch with his children and provide for them.

¶ 13    The trial court stated as follows.  In aggravation, defendant had a substantial history of delinquency and crime.  It was also necessary to deter others from committing the same crime, although that factor applies in every case.  In mitigation, defendant's offense, failing to register, neither caused nor threatened serious physical harm to anyone; the offense was nonviolent.

¶ 14    However, the court could not find that defendant had led a law-abiding life for a substantial period before committing his offense.  There had not been "a substantial chunk of time" in which defendant had not had "a problem."  In particular, defendant's 2015 aggravated assault had been the subject of three petitions to revoke probation.  Moreover, he had been arrested while on probation for the present offense.  Turning to defendant's argument that his character and attitudes made another crime unlikely, the court granted that he had demonstrated insights into his condition, which increased his chances of success.  Nonetheless, defendant's record was "replete with attempts at probation and unsatisfactory discharging."  These applied to his 1992 juvenile offenses and his criminal convictions in 2006, 2007, 2010, 2015, and 2019, the last for failure to register.  The court told him, "With that kind of history, I don't think that I can find that you would be particularly likely to comply with the terms and conditions of a period of probation."

¶ 15    The court could not find that imprisonment would entail excessive hardship to defendant's dependents; he had a nine-year-old son, but his parental rights had been terminated.

¶ 16    The court then stated that, although defendant had been "pleasant" in court, it was "hard to reconcile that person" with Castaneda's testimony and Jones's statement.  Defendant had injured his son, not merely threatening him with a knife but cutting him.  Further, Jones had said that

defendant had stabbed him before and that he was afraid of him. The court commented, "That's quite a legacy. So I have to make this decision in the context of that as well."

¶ 17    The court continued:

"You have admitted that you violated the terms and conditions of your probation. That was not for a substantive offense. It was for what's called a status violation which, in my mind, is a lesser issue, but I also have to put it in the context of your prior performance on probation.

I don't know if you're sitting here now saying that you are able and willing to comply with the terms and conditions of probation because of medications that you're on that you just don't follow through on when you're out in the community. I know you talked a great deal *** about life sort of gets in the way. As bad as I imagine jail is, it can be much more simplified and you're getting your medication and there's not a whole lot of choice about it.

And there's lots of choices when you're out of custody. And there's a lot that life throws at you. And you're not always dealing very well with those things, and I don't think you're following through on the mental health aspect of it. I don't think you follow through even if you have every intention to do so now when you're placed on a period of probation.

It is for that reason that I am sentencing you to [prison] for a period of five years. I don't think a term of seven is appropriate. ***

There is substance abuse treatment in the Department of Corrections. I hope you avail yourself of that. ***

But I simply feel that with the record that you have put together since getting involved in the court system in 1992, to place you on another term of probation would deprecate the seriousness of the offense."

¶ 18    Defendant moved to reconsider his sentence.  He argued in part that, although the court could properly consider his conduct while on probation, it had improperly commingled the original offense, failure to register, with the conduct in case No. 19-CF-1866 and had thus improperly punished him for the latter instead of the former. At the hearing on defendant's motion, the court stated that the comments on defendant's confrontation with Jones had been intended to note the unfortunate "legacy" that defendant had left for his son.  The alleged offense had not been an "overriding" factor in sentencing; defendant's criminal history and his performance on probation had "carried more weight."  The court again discussed defendant's lengthy juvenile and adult history and his repeatedly unsatisfactory performance while on probation.  The court stated that it had not commingled the circumstances of defendant's original offense with those of his alleged offense against his son.  Thus, it denied defendant's motion to reconsider his sentence.

¶ 19    This timely appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, defendant argues that the trial court erred in commingling the offense for which he was being resentenced, failure to register, with the alleged offense that he committed against his son Jones shortly thereafter.  Defendant contends that, as a result, the court improperly punished him for the latter offense and not the former.  For the reasons that follow, we disagree.

¶ 22    After revoking a defendant's probation, the trial court may impose any sentence that would have been appropriate for the original offense.  *People v. Risley*, 359 Ill. App. 3d 918, 920 (2005). The court may consider the defendant's conduct while on probation as it bears on his rehabilitative

potential. *Id.* However, the new sentence may not be punishment for that conduct. *People v. Varghese*, 391 Ill. App. 3d 866, 876 (2009). " '[A] sentence within the statutory range for the original offense will not be set aside on review *unless* the reviewing court is strongly persuaded that the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of revocation, and *not* for the original offense.' " (Emphases in original.) *People v. Vilces*, 186 Ill. App. 3d 983, 987 (1989) (quoting *People v. Young*, 138 Ill. App. 3d 130, 142 (1985)); see *People v. Miller*, 2021 IL App (2d) 190093, ¶ 24. " '[T]he record must clearly demonstrate that the trial court considered [the] defendant's original offense when fashioning his sentence.' " *Miller*, 2021 IL App (2d) ¶ 24 (quoting *Varghese*, 391 Ill. App. 3d at 877).

¶ 23    Defendant cites the court's discussion of his alleged offense in case No. 19-CF-1866 to argue that the court intended his sentence as punishment for that conduct and not for failing to register. After reading the court's entire explanation, however, we are not strongly persuaded—or, indeed, persuaded at all—that the court did anything other than consider the alleged offense as one of many factors that bore on his suitability for probation and prospects for rehabilitation.

¶ 24    The court's explanation of the sentence covers approximately seven pages in the transcript. The great majority of that is taken up with a thorough discussion of the pertinent factors in aggravation and mitigation. The court considered the original offense. The court began its discussion of the possible factors in mitigation by stating that the original offense, failure to register, did not cause or threaten serious harm and that defendant did not contemplate or intend such harm. Next, the court noted that defendant had a substantial history of offending, including some violent felonies, dating back to 1992. The court correctly noted that, in several instances, defendant had received probation but had failed to complete it satisfactorily, showing that he would

not be "particularly likely to comply with the terms and conditions of a period of probation." The court thus emphasized defendant's *entire* juvenile and criminal record as it bore on his prospects for rehabilitation and thus the appropriate sentence. Next, the court noted that a prison sentence would not entail excessive hardship on defendant's dependents.

¶ 25 There was no impropriety in any of the foregoing; defendant does not contend otherwise. It was only halfway through the trial court's discussion, when it turned to defendant's attack on Jones, that the court did what defendant contends was error. The court noted that defendant attacked his son and that his son was afraid of him. Those facts were drawn from the evidence, and the court did not imply that they were the basis for the ensuing sentence. Indeed, directly after making them, the court again noted that defendant was being resentenced for a "status violation" but that this offense had to be placed into the "context of [his] prior performance on probation."

¶ 26 The court then returned to its predominant theme: defendant's prospects for rehabilitation and the need for a substantial prison term instead of yet another chance at probation. Defendant had consistently failed to follow through on probation, and "[i]t [was] for that reason" that the court imposed a prison sentence. The court summed up: "[W]ith the record that you have put together since getting involved in the court system in 1992, to place you on another term of probation would deprecate the seriousness of the offense." It then sentenced defendant to five years' imprisonment, two years less than the statutory maximum, which the State had urged.

¶ 27 The record simply refutes defendant's contention that the trial court punished him for his conduct during his latest term of probation and not for the underlying offense. The court repeatedly made it plain that defendant was being punished for failure to register. The court did discuss defendant's attack on his son, as that recent and very serious conduct bore on his character and rehabilitative prospects; but it paid far more attention to how defendant's *entire* record over nearly

three decades bore on those basic factors. The court used this comprehensive view, along with other pertinent circumstances, to fashion defendant's sentence. Defendant does not contend that his sentence was excessive in light of the pertinent factors, and we could not so hold even if he did. See *People v. Alexander*, 239 Ill. 2d 205, 212 (2010) (reviewing court may not reduce a sentence unless trial court abused its discretion). Defendant has failed to show any error.

¶ 28                                    III. CONCLUSION

¶ 29     For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 30     Affirmed.